**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

**JUAN VALDERA**
**SOBIEDA VALDERA**
**BAHIJ BOUTROS**

   **Vs**        **20-CV-470 JJM-PAS**

**PHH MORTGAGE CORPORATION**
**DEUTSCHE BANK NATIONAL TRUST**
**COMPANY AS TRUSTEE FOR THE REGISTERED HOLDERS OF**
**CBA COMMERCIAL ASSETS,**
**SMALL BALANCE COMMERCIAL MORTGAGE PASS-THROUGH**
**CERTIFICATES, SERIES 2006-1**

### <u>MEMORANDUM IN SUPPORT OF MOTION FOR TEMPORARY</u> <u>RESTRAINING ORDER AND PRELIMINARY INJUNCTION</u>

Plaintiffs have filed this complaint seeking a Temporary Restraining Order against Deutsche Bank National Trust Company alleging that the Defendant does not own the note and is not the agent for the owner of the note and because the Plaintiffs were not mailed a Notice of Foreclosure Counseling prior to this Notice of Sale. They have made certain allegations which support their Motion. Plaintiff Juan Valdera ("Juan") is a resident of the State of Rhode Island with an address of 273-275 Rand Street, Central Falls, Rhode Island. Plaintiff Sobieda Valdera ("Sobieda") is a resident of the City of Warwick, Rhode Island. Plaintiff, Bahij Boutros ("Boutros") is a resident of the City of Cranston. They own the property located at 273-275

Rand Street, Central Falls, Rhode Island. The Plaintiffs as Borrowers

executed a Promissory Note in the amount of $300,000.00 to New Century

Mortgage Corporation on August 1, 2006 in conjunction with the purchase

of said property, which when Plaintiffs purchased this property, they moved

into this multi unit property as their residence. Juan Valdera still lives in this

property as his residence.

On August 1, 2006, Plaintiffs executed a mortgage to New Century to

secure the promissory note.   A copy of the Note is attached as Exhibit A and

a copy of the mortgage is attached as Exhibit B.     Deutsche Bank National

Trust Company as Trustee for the Holders of Commercial Assets, Small

Balance Commercial Mortgage Pass-through Certificates, Series 2006-1

("Deutsche Bank") is the owner of the mortgage.    Defendant, PHH

Mortgage Corporation ("PHH"), is a loan servicer and is the loan servicer

for our mortgage.   Korde & Associates, PC ("Korde")  scheduled a

foreclosure sale for the Plaintifff's  property and Juan Valdera's  residence

on November 4, 2020 at 12:00 PM.   A copy of this Notice of Sale mailed on

September 11, 2020 is attached as Exhibit C.  The Plaintiffs have alleged

that the note has not been endorsed. However since the  note is  not a

negotiable instrument as defined by the Rhode Island Uniform Commercial

Code, a blank endorsement will not transfer the Note, since Article 3 of the

Uniform Commercial Code will not apply.

As an unendorsed, non-negotiable instrument, the Note has not been

conveyed by the original owner, New Century Mortgage Corporation to any

entity and cannot be conveyed by a blank endorsement.    As a result,

Deutsche Bank is not the owner of the note or the agent for the owner of the

note and has no interest in the Note.    This note does not meet the criteria

for a negotiable instrument pursuant to R.I.G.L 6A-3-104. Specifically it

made numerous undertakings other than the promise to make payments of

money or to provide for acceleration or to secure collateral and stated the

following non-monetary undertakings which made  a non-negotiable

instrument, which does not comply with the provisions of the Uniform

Commercial Code, R.I.G.L 6A03-104, which defines a promissory note as

follows:

## § 6A-3-104. Negotiable instrument.

(a) Except as provided in subsections (c) and (d), "negotiable instrument"
means an unconditional promise or order to pay a fixed amount of money,
with or without interest or other charges described in the promise or order, if
it:

(1) Is payable to bearer or to order at the time it is issued or first comes into
possession of a holder;

(2) Is payable on demand or at a definite time; and

(3) **Does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money**, but the promise or order may contain (i) an undertaking or power to give, maintain, or protect collateral to secure payment, (ii) an authorization or power to the holder to confess judgment or realize on or dispose of collateral, or (iii) a waiver of the benefit of any law intended for the advantage or protection of an obligor. (emphasis added)

(b) "Instrument" means a negotiable instrument.

(c) An order that meets all of the requirements of subsection (a), except paragraph (1), and otherwise falls within the definition of "check" in subsection (f) is a negotiable instrument and a check.

(d) A promise or order other than a check is not an instrument if, at the time it is issued or first comes into possession of a holder, it contains a conspicuous statement, however expressed, to the effect that the promise or order is not negotiable or is not an instrument governed by this chapter.

(e) An instrument is a "note" if it is a promise and is a "draft" if it is an order. If an instrument falls within the definition of both "note" and "draft," a person entitled to enforce the instrument may treat it as either.

(f) "Check" means (i) a draft, other than a documentary draft, payable on demand and drawn on a bank or (ii) a cashier's check or teller's check. An instrument may be a check even though it is described on its face by another term, such as "money order."

(g) "Cashier's check" means a draft with respect to which the drawer and drawee are the same bank or branches of the same bank.

(h) "Teller's check" means a draft drawn by a bank (i) on another bank, or (ii) payable at or through a bank.

(i) "Traveler's check" means an instrument that (i) is payable on demand, (ii) is drawn on or payable at or through a bank, (iii) is designated by the term "traveler's check" or by a substantially similar term, and (iv) requires, as a condition to payment, a countersignature by a person whose specimen signature appears on the instrument.

(j) "Certificate of deposit" means an instrument containing an acknowledgment by a bank that a sum of money has been received by the bank and a promise by the bank to repay the sum of money. A certificate of deposit is a note of the bank.

History of Section.
(P.L. 2000, ch. 238, § 3; P.L. 2000, ch. 421, § 3.)

When the UCC was adopted in Rhode Island, it contained Official

Comments, which the Supreme Court has analyzed to determine the scope of

the UCC. The relevant portions of official comment for 6A-3-104 discuss

the need for no other promises:

1. The definition of "negotiable instrument" defines the scope of Article 3 since Section 3-102 states: "This Article applies to negotiable instruments." The definition in Section 3-104(a) incorporates other definitions in Article 3. An instrument is either a "promise," defined in Section 3-103(a)(12), or "order," defined in Section 3-103(a)(8). A promise is a written undertaking to pay money signed by the person undertaking to pay. An order is a written instruction to pay money signed by the person giving the instruction. Thus, the term "negotiable instrument" is limited to a signed writing that orders or promises payment of money. "Money" is defined in Section 1-201(24) and is not limited to United States dollars. It also includes a medium of exchange established by a foreign government or monetary units of account established by an intergovernmental organization or by agreement between two or more nations. Five other requirements are stated in Section 3-104(a): First, the promise or order must be "unconditional." The quoted term is explained in Section 3-106. Second, the amount of money must be "a fixed amount … with or without interest or other charges described in the promise or order." Section 3-112(b) relates to "interest." Third, the promise or order must be "payable to bearer or to order." The quoted phrase is explained in Section 3-109. An exception to this requirement is stated in subsection (c). Fourth, the promise or order must be payable "on demand or at a definite time." The quoted phrase is explained in Section 3-108**. Fifth, the promise or order may not state "any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money" with three exceptions**. The quoted phrase is based on

the first sentence of N.I.L. Section 5 which is the precursor of "no other promise, order, obligation or power given by the maker or drawer" appearing in former Section 3-104(1)(b). The words "instruction" and "undertaking" are used instead of "order" and "promise" that are used in the N.I.L. formulation because the latter words are defined terms that include only orders or promises to pay money. The three exceptions stated in Section 3-104(a)(3) are based on and are intended to have the same meaning as former Section 3-112(1)(b), (c), (d), and (e), as well as N.I.L. § 5(1), (2), and (3). Subsection (b) states that "instrument" means a "negotiable instrument." This follows former Section 3-102(1)(e) which treated the two terms as synonymous.

2. Unless subsection (c) applies, the effect of subsection (a)(1) and Section 3-102(a) is to exclude from Article 3 any promise or order that is not payable to bearer or to order. There is no provision in revised Article 3 that is comparable to former Section 3-805. The comment to former Section 3-805 states that the typical example of a writing covered by that section is a check reading "Pay John Doe." Such a check was governed by former Article 3 but there could not be a holder in due course of the check. Under Section 3-104(c) such a check is governed by revised Article 3 and there can be a holder in due course of the check. But subsection (c) applies only to checks. The comment to former Section 3-805 does not state any example other than the check to illustrate that section. Subsection (c) is based on the belief that it is good policy to treat checks, which are payment instruments, as negotiable instruments whether or not they contain the words "to the order of." These words are almost always pre-printed on the check form. Occasionally the drawer of a check may strike out these words before issuing the check. In the past some credit unions used check forms that did not contain the quoted words. Such check forms may still be in use but they are no longer common. Absence of the quoted words can easily be overlooked and should not affect the rights of holders who may pay money or give credit for a check without being aware that it is not in the conventional form.

Total exclusion from Article 3 of other promises or orders that are not payable to bearer or to order serves a useful purpose. It provides a simple device to clearly exclude a writing that does not fit the pattern of typical negotiable instruments and which is not intended to be a negotiable instrument. If a writing could be an instrument despite the absence of "to order" or "to bearer" language and a dispute arises with respect to the writing, it might be argued that the writing is a negotiable instrument because the other requirements of subsection (a) are somehow met. Even if

6

the argument is eventually found to be without merit it can be used as a litigation ploy. Words making a promise or order payable to bearer or to order are the most distinguishing feature of a negotiable instrument and such words are frequently referred to as "words of negotiability." Article 3 is not meant to apply to contracts for the sale of goods or services or the sale or lease of real property or similar writings that may contain a promise to pay money. The use of words of negotiability in such contracts would be an aberration. Absence of the words precludes any argument that such contracts might be negotiable instruments.

An order or promise that is excluded from Article 3 because of the requirements of Section 3-104(a) may nevertheless be similar to a negotiable instrument in many respects. Although such a writing cannot be made a negotiable instrument within Article 3 by contract or conduct of its parties, nothing in Section 3-104 or in Section 3-102 is intended to mean that in a particular case involving such a writing a court could not arrive at a result similar to the result that would follow if the writing were a negotiable instrument. For example, a court might find that the obligor with respect to a promise that does not fall within Section 3-104(a) is precluded from asserting a defense against a bona fide purchaser. The preclusion could be based on estoppel or ordinary principles of contract. It does not depend upon the law of negotiable instruments. An example is stated in the paragraph following Case # 2 in Comment 4 to Section 3-302.

Moreover, consistent with the principle stated in Section 1-102(2)(b), the immediate parties to an order or promise that is not an instrument may provide by agreement that one or more of the provisions of Article 3 determine their rights and obligations under the writing. Upholding the parties' choice is not inconsistent with Article 3. Such an agreement may bind a transferee of the writing if the transferee has notice of it or the agreement arises from usage of trade and the agreement does not violate other law or public policy. An example of such an agreement is a provision that a transferee of the writing has the rights of a holder in due course stated in Article 3 if the transferee took rights under the writing in good faith, for value, and without notice of a claim or defense.

Even without an agreement of the parties to an order or promise that is not an instrument, it may be appropriate, consistent with the principles stated in Section 1-102(2), for a court to apply one or more provisions of Article 3 to the writing by analogy, taking into account the expectations of the parties and the differences between the writing and an instrument governed by Article 3. Whether such application is appropriate depends upon the facts of each case.

3. Subsection (d) allows exclusion from Article 3 of a writing that would otherwise be an instrument under subsection (a) by a statement to the effect that the writing is not negotiable or is not governed by Article 3. For example, a promissory note can be stamped with the legend NOT NEGOTIABLE. The effect under subsection (d) is not only to negate the possibility of a holder in due course, but to prevent the writing from being a negotiable instrument for any purpose. Subsection (d) does not, however, apply to a check. If a writing is excluded from Article 3 by subsection (d), a court could, nevertheless, apply Article 3 principles to it by analogy as stated in Comment 2.
 (emphasis added)

In *Rotelli v. Catanzaro*, 686 AS. 2d 91, 94 (R.I., 1996), the Supreme Court

discussed negotiable instruments and applied the official comment in a

footnote:


[2] The parties have assumed that the promissory note is a negotiable instrument subject to § 6A-3-119 and have offered differing interpretations of Comment 3 to that section. **We note, however, that the promissory note contains a condition that destroys its negotiability, namely, that the note was subject to plaintiff's materially performing his obligations under a Release and Indemnification Covenant, a separate agreement signed by plaintiff on January 17, 1985. The promise to pay was thus conditional and could not form the basis of a negotiable instrument.** *See* **§§ 6A-3-104(1)(b) and 6A-3-105(2)(a).**(emphasis added)

The Rhode Island Supreme Court has reviewed negotiable instruments

and cited UCC 3-104 in *Note Capital Groups, Inc. v. Perretta*, 207 A. 2d

998 (2019). In that case, the  Court applied UCC 3-309 regarding lost notes

which were lost by a prior owner. The Court initially defined allonges in

footnote 4 as:

"[a] slip of paper sometimes attached to a negotiable instrument for the

purpose of receiving further indorsements when the original paper is filled

with indorsements." *Black's Law Dictionary* 92 (10th ed. 2014).

The Court also defined a negotiable instrument by citing UCC 3-104 in note

10:

[10] General Laws 1956 § 6A-3-104 defines a "negotiable instrument," in
pertinent part, as:

"an unconditional promise or order to pay a fixed amount of money, with or
without interest or other charges described in the promise or order, if it:

"(1) Is payable to bearer or to order at the time it is issued or first comes into
possession of a holder;

"(2) Is payable on demand or at a definite time; and

"(3) Does not state any other undertaking or instruction by the person
promising or ordering payment to do any act in addition to the payment of
money, but the promise or order may contain (i) an undertaking or power to
give, maintain, or protect collateral to secure payment, (ii) an authorization
or power to the holder to confess judgment or realize on or dispose of
collateral, or (iii) a waiver of the benefit of any law intended for the
advantage or protection of an obligor."

In *Labor Ready Northeast, Inc. v McConaghy*, 849 A. 2d 340 (2004),

the Rhode Island Supreme Court cited UCC 3-104 for the basic definition of

negotiable instruments in construing a case involving instruments which

were not negotiable, but nevertheless were instruments for other purposes.

In Onewest Bank v FMCDH Realty, 165 A.D.3d 128, 133 (NY App, 2018)

the Appellate Division of the New York Supreme Court held that a note was

not negotiable, citing a seminal case:

In 1846, a negotiable instrument was famously compared, by Justice Gibson of the Supreme Court of Pennsylvania, to a 133*133 "courier without luggage" (*Overton v Tyler*, 3 Pa 346, 347 [1846]), in recognition of the fact that such instruments must be "framed in the fewest possible words, and those importing the most certain and precise contract" (*id.* at 347).

Negotiable instruments have changed considerably in the intervening 172 years. While they are no longer spare as they once were (*see* Grant Gilmore, *Formalism and the Law of Negotiable Instruments,* 13 Creighton L Rev 441, 453 [1979]), Justice Gibson's description has proved to be remarkably resilient—though it may be more accurate to describe the modern negotiable instrument as a courier with a personal item and one carry-on bag.

The Rhode Island UCC provides some leeway for additional

provisions in UCC 3-106, which allows additional promises but only for

limited purposes:

### § 6A-3-106. Unconditional promise or order.

(a) Except as provided in this section, for the purposes of § 6A-3-104(a), a promise or order is unconditional unless it states (i) an express condition to payment, (ii) that the promise or order is subject to or governed by another writing, or (iii) that rights or obligations with respect to the promise or order are stated in another writing. A reference to another writing does not of itself make the promise or order conditional.

(b) A promise or order is not made conditional (i) by a reference to another writing for a statement of rights with respect to collateral, prepayment, or

acceleration, or (ii) because payment is limited to resort to a particular fund or source.

(c) If a promise or order requires, as a condition to payment, a countersignature by a person whose specimen signature appears on the promise or order, the condition does not make the promise or order conditional for the purposes of § 6A-3-104(a). If the person whose specimen signature appears on an instrument fails to countersign the instrument, the failure to countersign is a defense to the obligation of the issuer, but the failure does not prevent a transferee of the instrument from becoming a holder of the instrument.

(d) If a promise or order at the time it is issued or first comes into possession of a holder contains a statement, required by applicable statutory or administrative law, to the effect that the rights of a holder or transferee are subject to claims or defenses that the issuer could assert against the original payee, the promise or order is not thereby made conditional for the purposes of § 6A-3-104(a); but if the promise or order is an instrument, there cannot be a holder in due course of the instrument.

As will be demonstrated in this memorandum, the Loan agreement contains

numerous conditions and promises, which do not fit within UCC 3-104 or 3-

106 and thus is a non-negotiable instrument.

In *Madeiros v. Savino,* 418 A. 2d 839 (1980), the Rhode Island

Supreme Court followed 3-14 and found that a note was not negotiable

because this note was not payable to order or to bearer:

[1] The second note is not payable "to the order of" or "to the bearer" and therefore does not meet the requirement of negotiability found in G.L. 1956 (1969 Reenactment) § 6A-3-104(1)(d).

Other cases in other jurisdictions indicate the criteria for non-

negotiability which is present in this note.  In *Farouki v. Petra International*,

11

968 F. Supp 2d 216, 220  (D. D.C., 2013) the Court first defined a

Negotiable Instrument as:

 "unconditional promise or order to pay a fixed amount of money" that (1) is

payable to order; (2) is payable on demand; and (3) does not state any other

undertaking or instruction. D.C.Code § 28:3-104.

The court then found it was not negotiable because if failed every other

prong of the statutory definition:

*First,* is not unconditional because the rights and obligations under the Note
are defined by reference to the Secured Credit Facility Agreement. *See* Note
at 2.; *see also* 6 William D. Hawkland & Lary Lawrence, UCC Series § 3-
106:2 ("[A] writing is conditional if it states that rights or obligations with
respect to the promise or order are stated in another writing.").

    Another case which demonstrates non-negotiability of a note is *Holly*

*Acres, Ltd. V Charter Bank of Gainesville* 314 So.2d 209 (Fl. App 1975), in

which the Florida Appellate Court held that the note by incorporating the

terms of the mortgage was not negotiable:

The note having incorporated the terms of the purchase money mortgage
was not negotiable. The appellee Bank was not a holder in due course,
therefore, the appellant was entitled to raise against the appellee any
defenses which could be raised between the appellant and Rogers and
Blythe. Since appellant asserted an affirmative defense of fraud, it was
incumbent on the appellee to establish the non-existence of any genuine
issue of any material fact or the legal insufficiency of appellant's affirmative

defense. Having failed to do so, appellee was not entitled to a judgment as a matter of law; hence, we reverse.

The note, incorporating by reference the terms of the mortgage, did not contain the unconditional promise to pay required by Fla. Stat. § 673.3-104(1) (b).[1] Rather, the note falls within the scope of Fla. Stat. § 673.3-105(2) (a).[2] Although negotiability is now governed by the Uniform Commercial Code,[3] this was the Florida view even before the U.C.C. was adopted. *E.g.,* the Supreme Court in Brown v. Marion Mortgage Co., 1932, 107 Fla. 727, 145 So. 413, held that certain bonds which were "to be received and held subject to" a certain mortgage were non-negotiable. *See also,* First Bank of Marianna v. Havana Canning Co., 1940, 142 Fla. 554, 195 So. 188; Voges v. Ward, 1929, 98 Fla. 304, 123 So. 785; Mason v. Flowers, 1926, 91 Fla. 224, 107 So. 334.

Appellee Bank relies upon Scott v. Taylor, 1912, 63 Fla. 612, 58 So. 30, as authority for the proposition that its note is negotiable. *Scott,* however, involved a note which stated: "this note secured by mortgage." Mere reference to a note being secured by mortgage is a common commercial practice and such reference in itself does not impede the negotiability of the note. There is, however, a significant difference in a note stating that it is "secured by a mortgage" from one which provides, "the terms of said mortgage are by this reference made a part hereof." In the former instance the note merely refers to a separate agreement which does not impede its negotiability, while in the latter instance the note is rendered non-negotiable. *See* Fla. Stat. §§ 673.3-105(2) (a); 673.3-119.[4]

Another case which held that negotiability was destroyed by

incorporating obligations of other documents was Schumckie v, Alvey,

758 S.W.2d 31, 34 (Ky., 1988), in which the Kentucky Supreme Court noted:

A negotiable instrument is an *unconditional* order or promise to pay a sum certain in money.[2] KRS 355.3-104. If the instrument is "subject to or governed by another agreement," its negotiability is destroyed, and the

determination of whether an instrument is unconditional must be made from the content of the instrument itself. KRS 355.3-105(2)(a).

This note clearly incorporates obligation of other documents explicitly,

rendering it non-negotiable.

In DZ Bank v. McCranie, No 16-14773 (11th Cir. January 10, 2018)

the 11th Circuit reviewed a Note and discussed the criteria for negotiability

and non-negotiability:

A hallmark of negotiability, however, is the self-contained nature of the instrument and the ability to determine the entirety of the parties' rights and duties without consulting additional writings. See 6 William D. Hawkland & Larry Lawrence, Uniform Commercial Code Series § 3-106:2 (rev. supp. 2016) ("An instrument does not freely circulate in commerce if a purchaser must examine a separate agreement to determine whether payment of the instrument is conditioned upon the performance of some act or event. . . . The mere existence of the requirement that another writing be consulted is sufficient to destroy negotiability; it is irrelevant that examination of the other writing does not reveal a condition precedent to payment."). In general, a *mere reference* to a separate document does not preclude a note from being deemed a negotiable instrument. See A.I. Trade Fin., Inc. v. Laminaciones de Lesaca, S.A., 41 F.3d 830, 836 (2d Cir. 1994) ("[A] note containing an otherwise unconditional promise is not made conditional merely because it refers to, or states that it arises from, a separate agreement or transaction."); see also Williams v. Regency Fin. Corp., 309 F.3d 1045, 1049 (8th Cir. 2002) ("[W]here there is a paucity of [controlling] case law interpreting a provision of the U.C.C., . . . courts . . . look for guidance to decisions of other jurisdictions. . . ."); Black v. Don Schmid Motor, Inc., 657 P.2d 517, 523-24 (Kan. 1983) (looking to other jurisdictions). Mere references provide context for the commercial transactions giving rise to the instrument and do not, on their face, suggest the promise to pay is subject to additional terms, conditions, or promises. . .

The distinction between when a note's reference to another writing does or does not defeat negotiability, therefore, rests on two factors: the completeness and clarity of the note itself in setting forth the parties'

obligations and the clarity and completeness of the reference. This is true regardless of whether the separate writing actually amends the material terms of the parties' agreement. It is the need to consult the other writing that makes the note incomplete on its face and defeats negotiability. The applicable official U.C.C. comment makes this clear:

[A] promissory note is not [a negotiable] instrument . . . if it contains any of the following statements: 1. "This note is subject to a contract of sale dated . . . between the payee and maker of this note." 2. "This note is subject to a loan and security agreement dated . . . between the payee and maker of this note." 3. "Rights and obligations of the parties with respect to this note are stated in an agreement dated . . . between the payee and maker of this note." *It is not relevant whether any condition to payment is or is not stated in the writing to which reference is made. The rationale is that the holder of a negotiable instrument should not be required to examine another document to determine rights with respect to payment.* But subsection (b)(i) permits reference to a separate writing for information with respect to collateral, prepayment, or acceleration.
For example, a note would not be made conditional by the following statement: "This note is secured by a security interest in collateral described in a security agreement dated . . . between the payee and maker of this note. Rights and obligations with respect to the collateral are [stated in][governed by] the security agreement." The bracketed words are alternatives, either of which complies.

 This note does not merely reference other documents and obligations, but

instead imposes those obligations as part of the obligations in the note.

A review of this purported Promissory Note indicates the following

additional obligations which render it a non-negotiable instrument:

    The DEFAULT section  on page one provides for default upon the

following conditions, not related to the payment of the note:

**OTHER DEFAULTS** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note **or in any of the related documents or to comply with or perform any term, obligation, covenant or condition contained in any other agreement** between Lender and Borrower.

**ENVIRONMENTAL DEFAULT** Failure of any party to comply with or perform when due any term, obligation, covenant or condition contained in any environmental agreement executed in connection with any loan.

**FALSE STATEMENTS** Any warranty, representation or statement made or furnished to lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, wither now or at the time made or furnished or becomes false or misleading at any time thereafter.

**DEATH OR INSOLVENCY** The death of Borrower or the dissolution of termination of Borrower's existence as a gong business, the insolvency of Borrower, the appointment of a receiver for any party of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of proceeding under any bankruptcy or insolvency laws by or against Borrower.

**CREDITOR OR FOREITURE PROCEEDINGS.** Commencement of foreclosure or forfeiture proceeding, whether by judicial proceeding, self-help repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower  as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute. . .

**ADVERSE CHANGE** A material adverse change occurs in Borrower's financial condition or Lender believes the prospect of payment or performance of this Note is impaired.

16

**INSECURITY** Lender in good faith believes itself insecure.

**ATTORNY FEES; EXPENSES**  Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's Attorney fees and Lender's legal expenses, whether or note there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction) and appeals. If not prohibited by  applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

These conditions imposed by this document to require Plaintiffs to comply with the terms of the mortgage and any other related agreements renders this a non-negotiable instrument, which cannot be transferred under Article 3 by negotiation and a blank endorsement.  Article 9 of the Uniform Commercial Code applies to transfers of this note and requires proof of each sale of the note from New Century. The first sale of notes in this Trust were by New Century to CBA Commercial, LLC. The second sale of the notes in this Trust were by CBA Commercial, LLC to CBA Commercial Assets, LLC. Deutsche Bank purchased all the notes in the trust from CBA Commercial Assets, LLC. There is no documentation which verifies and confirms any transactions from the originator to Deutsche Bank.       The Note thus was not a negotiable instrument and could not be transferred to Deutsche Bank by a blank endorsement.

R.I.G.L 6A-9-109(a)(3) which provides:

17

**6A-9-109. Scope.**

(a) *General scope of chapter.* Except as otherwise provided in subsections (c) and (d), this chapter applies to:

(1) A transaction, regardless of its form, that creates a security interest in personal property or fixtures by contract;

(2) An agricultural lien;

(3) A sale of accounts, chattel paper, payment intangibles, or promissory notes;

Due to the non-negotiable nature of the Note, Deutsche Bank can not

enforce any obligations under the note and exercise the statutory power of

sale.   As a result Deutsche Bank has no ownership interest in the Note.

The Rhode Island Supreme Court in *Bucci v. Lehman*, 68 A.3d 1069

(2013)  held that the power of the statutory power of sale could be exercised

by a mortgagee provided that it was the holder of the note or an agent for the

owner of the note:

1087*1087 Similarly, we do not believe that our General Assembly "intended to proscribe [the] application of general agency principles in the context of mortgage foreclosure sales." *Eaton,* 969 N.E.2d at 1131. Therefore, we interpret the term "mortgagee" in our statutes in a similar fashion as did the Supreme Judicial Court of Massachusetts. Thus, it is our opinion that none of the statutes that plaintiffs rely upon prohibit MERS from foreclosing on the Bucci mortgage, because in so doing, MERS would be acting as an agent on behalf of the note owner. Furthermore, under our reading of these statutes, any of the obligations placed upon a "mortgagee" may be fulfilled by either the mortgage holder or the owner of the note, provided that an agency relationship exists between the two.

The Supreme Court further analyzed the ability to enforce the note

under the Restatement of Mortgages, stating:

this view is supported by the Restatement (Third) *Property (Mortgages)* § 5.4(c) at 380 (1997), which provides that "[a] mortgage may be enforced only by, *or in behalf of,* a person who is entitled to enforce the obligation the mortgage secures." (Emphasis added.)

Comment *e.* to that section provides further guidance. That comment says that "in general a mortgage is unenforceable if it is held by one who has no right to enforce the secured obligation." Restatement (Third) *Property* § 5.4, cmt. *e.* at 385. However,

"This result is changed if [the mortgage holder] has authority from [the note owner] to enforce the mortgage on [the note owner]'s behalf. For example, [the mortgage holder] may be a trustee or agent of [the note owner] with responsibility to enforce the mortgage at [the note owner]'s direction. [The mortgage holder]'s enforcement of the mortgage in these circumstances is proper. * * * The trust or agency relationship 1089*1089 may arise from the terms of the assignment, from a separate agreement, or from other circumstances. Courts should be vigorous in seeking to find such a relationship, since the result is otherwise likely to be a windfall for the mortgagor and the frustration of [the note owners]'s expectation of security." *Id.* at 385-86.

The Plaintiff's complaint seeks relief to preclude Deutsche Bank from

exercising the statutory power of sale until it is able to demonstrate that it is

the owner of the New Century Note or is the agent for the owner of the note.

Finally the Supreme Court in *Note Capital v. Perretta* , 207 A. 2d 998

(2019) recognized that a lost note could not be enforced under the Uniform

Commercial Code unless the entity seeking to enforce it and foreclose had in

fact lost the note.  The Court noted that any hardship arising from this result was based on the statute, which the Legislature had created in UCC 6A-3-309. Thus the provisions of the UCC mandate that this note be deemed non-negotiable. Under Bucci and the Restatement, Deutsche Bank cannot foreclose this non-negotiable instrument.

The other basis for this Motion is the failure of the mortgagee to provide a   Notice of Foreclosure Counseling to  Plaintiffs  pursuant to R.I.G.L. § 34-27-3.1 at least 45 days prior to September 11, 2020. This statute states:

### § 34-27-3.1. Foreclosure counseling.

(a) No less than forty-five (45) days prior to initiating any foreclosure of real estate pursuant to subsection 34-27-4(b), the **mortgagee shall provide to an individual consumer mortgagor** written notice of default and the mortgagee's right to foreclose by first class mail at the address of the real estate and, if different, at the address designated by the mortgagor by written notice to the mortgagee as the mortgagor's address for receipt of notices.

(b) The written notice required by this section shall be in English and Spanish and, provided the same is then available, shall advise the mortgagor of the availability of counseling through HUD-approved mortgage

counseling agencies and, the toll-free telephone number and website address maintained to provide information regarding no-cost HUD-approved mortgage counseling agencies in Rhode Island. The written notice may also contain any other information required under federal law. A form of written notice meeting the requirements of this section shall be promulgated by the department of business regulation for use by mortgagees at least thirty (30) days prior to the effective date of this section. Counseling shall be provided at no cost to the mortgagee.

(c) Failure of the mortgagee to provide notice to the mortgagor as provided herein shall render the foreclosure void, without limitation of the right of the mortgagee thereafter to reexercise its power of sale or other means of foreclosure upon compliance with this section. The mortgagee shall include in the foreclosure deed an affidavit of compliance with this section.

(d) As used herein and in this chapter, the term "HUD" means the United States Department of Housing and Urban Development and any successor to such department.

This statute provides that failure to provide Plaintiffs a separate Notice of Foreclosure Counseling at least forty five days before initiating any foreclosure by mailing a Notice of Sale will render the sale void. Korde

21

on behalf of Deutsche Bank had mailed Plaintiffs a previous Notice of Sale dated July 17, 2020 scheduling a sale for September 19, 2020. However Juan Valdera  never was provided a Notice of Foreclosure counseling at his home address in regard to this Notice of Sale at least 45 days prior to July 17, 2020 and all Plaintiffs  were not provided a separate Notice of Foreclosure Counseling by first class mail at least 45 days prior to the mailing of the Notice of Sale on September 11, 2020. There is no dispute about this allegation. This statute clearly requires that there be proof that the mortgagor receive this Notice.   This precondition was for "any Notice of sale" and was a remedial statute to be read together with the other statutes in that Chapter of the General Laws. R.I.G.L. 34-27-3.2 requires mediation notice compliance with limitations, such as the default date of the loan.  Here there is no such limitation and instead the legislation states:

No less than forty-five (45) days prior to initiating any foreclosure of real estate pursuant to subsection 34-27-4(b), the **mortgagee shall provide to an individual consumer mortgagor** written notice of default and the mortgagee's right to foreclose by first class mail

The use of the terms "initiating any foreclosure" clarifies that this must be part of the procedure any time a foreclosure is initiated.  The General Assembly has these two sections next to each other in the same Chapter. The temporal use of 45 days prior to any initiating suggests that

there is no logical reason to allow a mortgagee to initiate one foreclosure preceeded by a Notice of Foreclosure Counseling but not be required to comply with the statute the next time it initiates a foreclosure, such as in this case.  Strict compliance in mortgage cases has been set forth by this Court previously and the Rhode Island Supreme Court in *Woel v. Christiana Trust*, 228 a. 2d 339 (R.I., 2020) without having to demonstrate prejudice. Here the statute is clear that before any foreclosure a Notice must be provided. A Notice of Foreclosure Counseling provides information to the mortgagor when that person is facing foreclosure and does not provide a blank check for a mortgagee to foreclose without complying with the statute.

The failure of Deutsche Bank to strictly comply with the terms of the mortgage and R.I.G.L 34-27-3.1 renders void any attempt to commence the alleged foreclosure by Statutory Power of Sale, without having the contractual or statutory ability to conduct this foreclosure. The inability of Deutsche Bank to enforce the note due to the note not being a negotiable instrument will render this foreclosure void because Deutsche Bank is not the owner of the Note nor the agent for the owner of the note.    Plaintiffs will be irreparably harmed if the foreclosure sale on November 4, 2020 by Deutsche Bank  proceeds and Juan Valdera'a  home and the property of Boutros and Sobieda and Juan is  sold.

Plaintiffs have a substantial likelihood of success in the pending action, would otherwise suffer irreparable harm and can claim the greater hardship in the absence of an order, which will not disserve the public interest if imposed. The failure of Deutsche Bank to comply with R.I.G.L 34-27-3.1 renders void any attempt to commence the alleged foreclosure by Statutory Power of Sale. These facts demonstrate that Plaintiffs have a substantial likelihood of success. Likewise a foreclosure of Plaintiffs' property by a party not entitled to foreclose on the property will cause them irreparable harm, which hardship is greater than any hardship, which may be claimed by defendant. Such relief sought by Plaintiffs will not disserve the public interest if imposed. A copy of this Affidavit and Motion and Complaint has been provided to the Attorney for Deutsche Bank, John McNicholas, Esq. Notice was provided to John McNicholas, Esq. on August 15, 2020 that this Note was not a negotiable instrument.

For these reasons, this Court should grant this Motion and enjoin Deutsche Bank and any other entity acting on its behalf from conducting or continuing or advertising a foreclosure sale on November 4, 2020 or at any other time until there has been compliance with R.I.G.L 34-27-3.1 and Deutsche Bank establishes that it has an ownership interest in the note or is agent for the owner of the note.

Respectfully Submitted

JUAN VALDERA
SOBIEDA VALDERA
BAHIJ BOUTROS

By their Attorney

November 3, 2020                    /s/ John B. Ennis
                                    JOHN B. ENNIS, ESQ. #2135
                                    1200 Reservoir Avenue
                                    Cranston, Rhode Island 02920
                                    (401) 943-9230
                                    Jbelaw75@gmail.com