## UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

| | |
|---|---|
| Juan Valdera, Sobieda Valdera and Bahij Boutros,<br><br>        Plaintiffs,<br><br>v.<br><br>PHH Mortgage Corporation and Deutsche Bank National Trust Company as Trustee for the Registered Holders of CBA Commercial Mortgage Pass-Through Certificate, Series 2006-1,<br><br>        Defendants. | **CASE No. 1:20-CV-00470-JJM-PAS** |

### DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendants, PHH Mortgage Corporation ("PHH") and Deutsche Bank National Trust Company as Trustee for The Registered Holders of CBA Commercial Assets, Small Balance Commercial Mortgage Pass-Through Certificates, Series 2006-1 ("Deutsche Bank") (collectively the "Defendants") file this memorandum of law in support of their Motion for Summary Judgment on all five counts of the Plaintiffs' Complaint. A separate Statement of Undisputed Facts is incorporated herein by reference.

### SUMMARY OF CLAIMS AND ARGUMENT

Plaintiffs' claims arise out of a 2005 mortgage loan transaction they acknowledged in writing at the time of the closing was for "commercial purposes." They filed this action on November 3, 2020 on the eve of Deutsche Bank's scheduled foreclosure sale the following day of the six-unit apartment building encumbered by the mortgage alleging that (a) the note secured by the mortgage is not a negotiable instrument, that Deutsche Bank is not the owner of the note and therefore is not a party entitled to enforce the mortgage and the default remedies provided for

therein (Count I); (b) that Deutsche Bank failed to send the notice required by R.I.G.L. § 34-27-3.1 advising the Plaintiffs of the availability of credit counseling before sending the Plaintiffs a notice of foreclosure sale; (Count II); (c) that Deutsche Bank breached the covenant of good faith and fair dealing by failing to abide by contractual and statutory predicates before proceeding with noticing a foreclosure sale (Count III); and (d) that PHH, not Deutsche Bank, violated the Fair Debt Collections Practices Act,[1] by threatening to proceed with a foreclosure sale of the property without having the right to do so (Count IV). Count V sought and the Plaintiffs did previously obtain in this action a temporary restraining order enjoining the foreclosure sale and the sale was cancelled accordingly.

The note *is* a negotiable instrument. The note contains a single indorsement in blank by the original lender and Deutsche Bank is in possession of the note. Deutsche Bank is therefore the holder of the note and entitled to enforce it. Pursuant to a prior, final judgment of the Providence Superior Court Deutsche Bank is also the holder of the mortgage. As holder of the mortgage and the note secured by the mortgage, Deutsche Bank had and continues to have the right to enforce the default remedies provided for in the mortgage. Deutsche Bank did render a credit counseling notice to the Plaintiffs at least 45 days prior to initiating foreclosure as required by § 34-27-3.1. Plaintiffs' breach of the covenant of good faith and fair dealing and FDCPA counts necessarily fail as a result since they are predicated on assertions that Deutsche Bank lacked authority to foreclose the mortgage and failed to send the requisite credit-counseling notice. Moreover, the FDCPA claim against PHH is a non-starter in any event since the FDCPA has no application to a commercial loan transaction. Even if it did apply, it was Deutsche Bank, not PHH, that noticed the foreclosure sale. Accordingly, Deutsche seeks summary judgment in its favor on Counts I, II

---

[1] 15 U.S.C. §1692, et seq.

*Valdera et al.*
*v.*                                    Page **2** of 30
*PHH et al.*

*D's Memorandum of Law ISO*
*Motion for Summary Judgment*
*Docket # 1:20-CV-00470-JJM-PAS*

and III.  PHH seeks summary judgment in its favor on Count IV. Deutsche Bank seeks summary judgment on Count V.

## TRAVEL OF CASE AND PRIOR HISTORY

The Plaintiffs, Juan Valdera, Sobieda Valdera and Bahij Boutros (collectively the "Plaintiffs" or "Mortgagors"), financed the purchase of a six (6)-unit apartment complex located at 273-275 Rand Street, Central Falls (the "Property") in 2005 by obtaining a $300,000.00 loan (the "Commercial Loan") from New Century Mortgage Corporation ("New Century") and executing a promissory note and mortgage in favor of New Century on August 1, 2005 [Statement of Undisputed Fact ("Statement"), ¶¶ 1, 15].

The Commercial Loan is evidenced by (a) a $300,000.00 promissory note given by the Plaintiffs to New Century dated August 1, 2005 with an Allonge containing a single indorsement in blank by New Century and (b) by a $300,000.00 mortgage encumbering the Property also dated August 1, 2005 and duly recorded with the Central Falls Land Evidence Records in Book 621, Page 253 (the "Mortgage") [Statement, ¶¶ 2, 3 and 4].

The loan application signed by the Plaintiffs and submitted to New Century for purposes of inducing it to make the Commercial Loan stated that the Property was being purchased for "investment purposes" [Statement, ¶ 5].  Each of the Plaintiffs also signed an "Affidavit of Commercial Purpose" wherein he/she confirmed that the Commercial Loan was being procured for "business or commercial purposes and not for personal, family or household (consumer) purposes" and that he/she had been informed that the federal and state consumer protection laws would not apply to the loan as the loan was primarily for business or commercial purposes [Statement, ¶ 6].

*Valdera et al.*
*v.*
*PHH et al.*

Page **3** of **30**

*D's Memorandum of Law ISO*
*Motion for Summary Judgment*
*Docket # 1:20-CV-00470-JJM-PAS*

In November 2016 Deutsche Bank filed a complaint in Providence Superior Court in which it named the Plaintiffs and the New Century Liquidating Trust[2] as defendants and sought a judgment declaring Deutsche Bank to be the holder of the Mortgage [Statement, ¶ 7]. Plaintiffs, through the same counsel who is now representing them in the instant proceeding before this Court, appeared in the Superior Court action [Statement, ¶ 8. In July 2019, the Superior Court issued a judgment equitably assigning the Mortgage to Deutsche Bank and declaring Deutsche Bank to be holder of such Mortgage [Statement, ¶ 9]. The Superior Court's judgment was recorded with the Central Falls Land Evidence Records on August 14, 2019, in Book 960, Page 70 [Statement, ¶ 9].

Deutsche Bank, through its prior loan servicer, referred the loan to local counsel for foreclosure in 2017 as the loan was and remains several years delinquent with a loan due date of October 1, 2012 [Statement, ¶¶ 16, 27].

On September 27, 2019, Defendants, through counsel, issued a 30-day Notice of Default to each of the Plaintiffs at multiple addresses [Statement, ¶ 17]. On November 14, 2019, Deutsche Bank, through counsel, sent notices to each of the Plaintiffs accelerating the entire indebtedness due under the Note and Mortgage [Statement, ¶18]. Deutsche Bank scheduled a foreclosure sale for January 17, 2020 but later canceled that sale after the Plaintiff, Sobieda Valdera, filed a Chapter 7 bankruptcy petition on January 15, 2020 [Statement, ¶19].

Deutsche Bank obtained relief from the automatic stay by order of the bankruptcy court in February 2020 [Statement, ¶ 20]. Deutsche Bank, through counsel, issued a Foreclosure Counseling Notice pursuant to R.I.G.L. § 34-27-3.1 to each of the Plaintiffs at multiple addresses

---

[2] New Century Mortgage Corporation filed for Chapter 11 bankruptcy protection in 2007 in the United States Bankruptcy Court for the District of Delaware, Case No. 07-10419 and a Liquidating Trust was created pursuant to the terms of a confirmed plan of reorganization to receive title to distribute New Century assets.

*Valdera et al.*                                    *D's Memorandum of Law ISO*
*v.*                          Page **4** of **30**          *Motion for Summary Judgment*
*PHH et al.*                                    *Docket # 1:20-CV-00470-JJM-PAS*

on May 29, 2020 [Statement, ¶ ¶ 21-23].  It then noticed and published a non-judicial foreclosure sale for September 10, 2020 pursuant to R.I.G.L. § 34-27-4(b) [Statement, ¶ 22].

Plaintiffs, through counsel, sent a letter to Defendants' counsel dated August 15, 2020 purporting to dispute the debt evidenced by the Note and Mortgage pursuant to the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, et seq. challenging Deutsche Bank's status as holder of the Note based on the assertions that (a) the note is non-negotiable and therefore (b) the right to enforce the note cannot be transferred by an indorsement in blank and a transfer of possession alone (instead Plaintiffs argue, an assignment of the right to enforce is required) [Statement, ¶ 25].

Deutsche Bank cancelled the September 10, 2020 to allow it to issue a response to the Plaintiffs' dispute letter and to allow Plaintiffs a reasonable time to review the response before conducting the sale [Statement, ¶ 26].  Deutsche Bank issued a detailed response to Plaintiffs' counsel on September 3, 2020 and thereafter noticed and published for a new sale date of November 4, 2020 [Statement, ¶ ¶, 27 and 28].

Plaintiffs filed the instant action on November 3, 2020 and, the next day, obtained a preliminary injunction enjoining the November 4th sale.  Deutsche Bank then caused its November 4, 2020 foreclosure sale to be canceled in conformity with the Court's order.

The Commercial Loan remains more than nine (9) years delinquent [Statement, ¶ 29.  In addition, Deutsche Bank through its loan servicer, PHH, has advanced more than $116,000.00 to pay real estate taxes assessed to and maintain hazard insurance on the Property for which it has not been reimbursed by the Plaintiffs [Statement, ¶ 30].

*Valdera et al.*
*v.*
*PHH et al.*
Page **5** of **30**
*D's Memorandum of Law ISO*
*Motion for Summary Judgment*
*Docket # 1:20-CV-00470-JJM-PAS*

**<u>Standard of Review</u>**

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Although the court must draw all reasonable inferences in the nonmovant's favor, it should not "credit bald assertions, empty conclusions [or] rank conjecture." *Garmon v. Nat'l R.R. Passenger Corp.,* 844 F.3d 307 (1st Cir. 2016) citing *Pina v. Children's Place,* 740 F.3d 785, 795 (1st Cir. 2014) (quoting *Cabin v. Hernandez v. Phillip Morris USA, Inc.,* 486 F.3d 1, 8 (1st Cir. 2007).  "[A] party cannot successfully oppose a motion for summary judgment by resting 'upon mere allegations or denials in his pleading.'" *Pina,* 740 3d at 795 (quoting *LeBlanc v. Great Am. Ins. Co.,* 6 F.3d 836, 841 (1st Cir. 1993).

"Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "For cases in which the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate." *Essex Ins. Co. v. McFadden*, No. 6:09-cv-00193, 2010 WL 2246293, at *3 (E.D. Tex. June 3, 2010).

**ARGUMENT**

**<u>I.</u>**

**DEUTSCHE BANK IS ENTITLED TO SUMMARY JUDGMENT ON COUNT I BECAUSE THE NOTE *IS* A NEGOTIABLE INSTRUMENT AND DEUTSCHE BANK IS THE HOLDER OF THE NOTE AND MORTGAGE AND THUS ENTITLED TO ENFORCE THE DEFAULT REMEDIES PROVIDED IN THE MORTGAGE**

Count I of the Plaintiffs' Complaint seeks a declaratory judgment holding that "the promissory note is not a negotiable instrument, that any purported endorsement on the Note did

*Valdera et al.*
*v.*                                    Page **6** of 30
*PHH et al.*

*D's Memorandum of Law ISO*
*Motion for Summary Judgment*
*Docket # 1:20-CV-00470-JJM-PAS*

not convey rights to Deutsche Bank, that Deutsche Bank is not the owner of the loan agreement nor the agent for the owner of the Note and Deutsche Bank lacks standing to exercise the statutory power of sale (in the Mortgage).  Count 1 does not apply to Defendant PHH.

## A.

### The Promissory Note is, in fact, a Negotiable Instrument as Defined in Article 3

Pursuant to R.I Gen. Laws §6A-3-104 a negotiable instrument means an "unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it: 1) is payable to bearer or to order at the time it is issued or first comes into possession of a holder; (2) is payable on demand or at a definite time; and (3) does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money, but the promise or order may contain (i) an undertaking or power to give, maintain, or protect collateral to secure payment, (ii) an authorization or power to the holder to confess judgment or realize on or dispose of collateral, or (iii) a waiver of the benefit of any law intended for the advantage or protection of an obligor."

> *"The Note Contains an Unconditional Promise or Order to Pay a Fixed Amount of Money, with or without Interest or Other Charges Described in the Promise or Order"*

The Note[3] provides that the Plaintiffs who are collectively referred to therein as the "Borrower," "jointly and severally promise to pay to New Century Mortgage Corporation ("Lender"), *or order*, in lawful money of the United States of America, the principal amount of Three Hundred Thousand & 00/100 Dollars ($300,000.00) together with interest on the unpaid principal balance from August 3, 2005, until paid in full."    The foregoing is clearly an unconditional promise by the Plaintiffs to pay New Century Mortgage Corporation, "or order", a

---

[3] A copy of the Note is attached to this Memorandum at <u>Exhibit A</u>.

*Valdera et al.*
*v.*                                        Page **7** of **30**
*PHH et al.*

*D's Memorandum of Law ISO*
*Motion for Summary Judgment*
*Docket # 1:20-CV-00470-JJM-PAS*

fixed amount of money ($300,000.00) by a definite time, i.e., the stated "maturity" date of September 1, 2035.[4]

Pursuant to language contained in the paragraphs styled in the Note as PAYMENT, VARIABLE INTEREST RATE and RATE CHANGES, respectively, the Note provides for interest to accrue on the outstanding principal balance at the fixed rate of 7.025% for the first seven (7) years (or 84 months) of the loan (the "Fixed Rate Period" – see "Rate Changes" paragraph). Thereafter, the interest rate is subject to change in accordance with the 6-Month Libor index beginning on the first month after the conclusion of the Fixed Rate Period and on the first day of every sixth month thereafter.

Section 6A-3-112(b) of Rhode Island's Uniform Commercial Code ("UCC") makes it clear that the inclusion of a variable interest rate feature in a promissory note does not destroy the note's negotiability:

> "Interest may be stated in an instrument as a fixed or variable amount of money or it may be expressed as a fixed or variable rate or rates. The amount or rate of interest may be stated or described in the instrument in any manner and may require reference to information not contained in the instrument. If an instrument provides for interest, but the amount of interest payable cannot be ascertained from the description, interest is payable at the judgment rate in effect at the place of payment of the instrument and at the time interest first accrues."

Plaintiffs assert in their Complaint that the note is non-negotiable because "due to the 360 day [sic.] interest calculation, the amount due under this note cannot be determined by reviewing the note" [Compl., ¶ 23, sub-paragraph no. 1]. The assertion is without merit for a number of reasons.

---

[4] The paragraph styled "Payment" references a sequence of payments with a concluding "principal and interest payment of $1,828.97 on September 1, 2035." The Note further provides that "[t]his estimated final payment is based on the assumption that all payments will be made exactly as scheduled and that the Index does not change; the actual final payment will be for all principal and accrued interest not yet paid, together with any other unpaid amounts under this Note."

*Valdera et al.*
*v.*
*PHH et al.*

Page **8** of 30

*D's Memorandum of Law ISO*
*Motion for Summary Judgment*
*Docket # 1:20-CV-00470-JJM-PAS*

First, to the extent Plaintiffs' assertion states or means to infer that the interest rate or amount of the monthly interest payment must be ascertainable strictly from the information contained within the four corners of the note itself, the statement or inference is clearly contradicted by the plain language of the statute which provides that the amount of interest "may require reference to information not contained in the instrument."

Second, the interest component of the monthly payment amount due under the Note at any given time is otherwise easily ascertainable by referencing (a) a monthly mortgage statement or payment history reflecting the current principal balance of the loan and, (b) if beyond the 84-month "Fixed Interest Period," the published 6-month LIBOR index on the first day of March and October, respectively, for each year of the remaining loan term.  In relevant part, the Note provides in the paragraph styled "PAYMENT," as follows:

> "Interest on this Note is computed on a 30/360 simple interest basis; that is, with the exception of odd days in the first payment period, monthly interest is calculated by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by a month of 30 days.  Interest for the odd days is calculated on the basis of the actual days to the next full month and a 360-day year."

Third and finally, even if the amount of interest payable on the Note were not ascertainable from the description (i.e., the formula recited above) provided for in the Note, R.I.G.L. §6A-3-112(b) states that in such instance, "interest is payable at the judgment rate in effect at the place of payment of the instrument and at the time interest first accrues."

In sum, the statute expressly authorizes reference to information not contained in the instrument to determine the amount of interest payable on the Note, in this case a monthly payment statement or loan payment history and, if beyond the Fixed Rate Period, the 6-Month Libor rate

*Valdera et al.*
*v.*
*PHH et al.*
Page **9** of 30
*D's Memorandum of Law ISO*
*Motion for Summary Judgment*
*Docket # 1:20-CV-00470-JJM-PAS*

on March 1 and October 1, respectively[5].  Insertion of the applicable interest rate (either the initial 7.025% or the Index rate for the six-month period in question) and outstanding principal balance easily yields the monthly interest payable on the Note.  And, even if the monthly interest payable on the Note were not ascertainable by utilizing the description/formula provided for in the Note, the statute provides that the judgment rate in effect as of August 1, 2005 would apply.  There is, therefore, no merit to the Plaintiffs' assertion that the amount payable under the Note cannot be determined because of the "360-day interest calculation".

*A reference to another writing does not of itself make the promise or order conditional*

The Plaintiffs next allege that the Note is non-negotiable because it contains numerous "non-monetary undertakings" in the "Default" section of the Note. The phrase "any other undertaking" is not defined by statute or the UCC.  Plaintiffs maintain that various occurrences defined as "Event(s) of Default" in the Note are "additional obligations," "not related to payment of the note" that render the note "a non-negotiable instrument" [Compl., ¶ 23].  Specifically, Plaintiffs assail the language contained in the subparagraphs styled "Other Defaults", "Environmental Default", "False Statements", "Death or Insolvency", "Creditor or Forfeiture Proceedings", "Adverse Change" and "Insecurity" under the paragraph heading "Default" enumerated on pages 1 and 2 of the Note.

The controlling statutes refute Plaintiffs' position.  R.I.G.L. § 6A-3-106 states:

> "(a) Except as provided in this section, for the purposes of § 6A-3-104(a), a promise or order is unconditional unless it states (i) an express condition to payment, (ii) that the promise or order is *subject to or governed by* another writing, or (iii) that rights or obligations *with respect to the promise or order* are stated in another writing.  *A reference to another writing does not of itself make the promise or order conditional [emphasis added]."*

---

[5] The Note further provides under the VARIABLE INTEREST RATE heading, that "Lender will tell Borrower the current Index rate upon Borrower's request."

*Valdera et al.*
*v.*                                      Page **10** of 30
*PHH et al.*

*D's Memorandum of Law ISO*
*Motion for Summary Judgment*
*Docket # 1:20-CV-00470-JJM-PAS*

None of the default subparagraphs assailed by Plaintiffs condition the Plaintiffs' promise to pay a fixed amount of money in any manner or state that such promise is *subject to or governed* by another writing. Plaintiffs concede as much in their Complaint in noting that these provisions are "not related to the payment of the note" [Compl., ¶ 23, subparagraph no. 2]. Rather, these subparagraphs articulate occurrences that constitute "event(s) of default" entitling Lender to "declare the entire unpaid principal balance on [the] Note and all accrued unpaid interest immediately due" [see ¶ styled "Lender's Rights," Note, pg. 2].

The "Other Defaults" and "Environmental Default" subparagraphs identify an "event of default", respectively, as Borrower's failure to "comply with any term, obligation, covenant or condition contained in [the] Note, or in any of the related documents" or "in any other agreement between Lender and Borrower" or "in any environmental agreement executed in connection with any loan." Any warranty, representation or statement made by Borrower or on Borrower's behalf "under [the] Note or the related documents" that is "false or misleading in any material respect" constitutes an event of default under the "False Statements" subparagraph. Each of these provisions permissibly reference other writings without rendering the Plaintiffs' promise to pay a fixed amount of money "subject to or governed" by any of these other writings.

None of the subparagraphs identifying "events of default" burden the Note at issue here by affecting the amount owed under or the payment terms contained in the Note.

The plain language of the controlling statute, R.I.G.L. § 6A-3-106, simply does not support the Plaintiffs' position. Likewise, Deutsche Bank is unaware of any precedent that would support Plaintiffs' unique interpretation of the statute suggested in their Complaint.

*Valdera et al.*
*v.*
*PHH et al.*

Page **11** of **30**

*D's Memorandum of Law ISO*
*Motion for Summary Judgment*
*Docket # 1:20-CV-00470-JJM-PAS*

*Undertakings to Give, Maintain, Protect, Realize On or Protect Collateral Are Expressly Authorized by §6A-3-104*

R.I.G.L. § 6A-3-104 (3) provides that a negotiable instrument may properly contain:

(i)   an undertaking or power to give, maintain, or protect collateral to secure payment,

(ii)  an authorization or power to the holder to confess judgment or realize on or dispose collateral, or

(iii) a waiver of the benefit of any law intended for the advantage or protection of the obligor.

The subparagraph in the Note styled "Creditor or Forfeiture Proceedings" and identifying "commencement of foreclosure or forfeiture proceedings" brought by any creditor of Borrower or by any governmental agency against any collateral securing the loan as an "event of default" is an undertaking by the Plaintiffs to maintain or protect the Lender's security for repayment of the loan and is expressly authorized by the terms of

§ 6A-3-104(3)(i). Similarly, the language in the same subparagraph giving the Borrower the option of having the commencement of foreclosure or forfeiture proceedings by another creditor or governmental agency *not* regarded as an event of default if the Borrower "deposits monies or a surety bond" that Lender determines is "an adequate reserve or bond for the dispute" constitutes an undertaking by the Borrowers to give, maintain and/or protect the Lender's collateral against adverse action by another creditor and nothing more. Nothing in this subparagraph conditions the Plaintiffs' promise to pay a fixed amount of money in any way. It is again, as the Plaintiffs admit in their Complaint, a provision "not related to the payment of the [N]ote".

The "Death or Insolvency" subparagraph identifies various occurrences as additional "events of default" under the Note such as the death or insolvency of the Borrower, the appointment of a receiver for any of the Borrower's property, an assignment for the benefit of creditors or the commencement of any insolvency or bankruptcy proceedings by or against the

*Valdera et al.*
*v.*
*PHH et al.*                    Page **12** of **30**                    *D's Memorandum of Law ISO*
*Motion for Summary Judgment*
*Docket # 1:20-CV-00470-JJM-PAS*

borrower.  As with the Creditor or Forfeiture Proceedings subparagraph, nothing contained in the Death or Insolvency provision conditions or impacts the Plaintiffs' promise to pay a fixed amount of money.

Generally, the paragraph is fairly characterized as an undertaking to maintain and protect the Lender's collateral in that insolvency or bankruptcy proceedings could pose a threat to the Lender's interest in such collateral in the form of a cramdown, trustee or debtor-in-possession's sale of collateral free and clear of liens, or any number of other provisions adverse to the Lender and contained in a plan of reorganization confirmed over the Lender's objection.  The same can be said of death or dissolution of the debtor, appointment of a receiver or assignment for the benefit of creditor events in that each poses a threat to the ability of the Borrower or his successors to maintain the collateral.  Here, the importance of maintaining a six-unit, residential apartment building cannot be overstated from the Lender's perspective.  No Lender wants to inherit a dilapidated residential apartment building rife with code violations and the costs associated with remediating such conditions.  The insolvency and bankruptcy provisions are also properly construed as a waiver of laws intended for the benefit or advantage of the Borrower and therefore expressly authorized by R.I.G.L. § 6A-3-104 (3)(iii).

> *The Insecurity and Adverse Change Provisions Do Not Destroy Negotiability; R.I.G.L. 6A-1-309 Simply Tempers the Creditor's Exercise of Such Provisions with a Good Faith Requirement*

Plaintiffs say that the subparagraphs styled "Adverse Change" and "Insecurity" destroy negotiability. There is no support for Plaintiffs' position in Article 3 (R.I.G.L. § 6A-3-101, et seq.) or elsewhere in the Code. Moreover, R.I.G.L. § 6A-1-309 appears to expressly authorize the use of such provisions in instruments governed by the Code:

*Valdera et al.*
*v.*
*PHH et al.*                    Page **13** of **30**                    *D's Memorandum of Law ISO*
*Motion for Summary Judgment*
*Docket # 1:20-CV-00470-JJM-PAS*

> "A term providing that one party or that party's successor in interest may accelerate payment or performance or require collateral or additional collateral 'at will' or when the party 'deems itself insecure,' or words of similar import, means that the party has power to do so only if that party in good faith believes that the prospect of payment or performance is impaired. The burden of establishing lack of good faith is on the party against which the power has been exercised."

So, rather than prohibiting such clauses the Code simply tempers a creditor's use of such clauses by imposing on such creditor a good faith requirement.

### R.I.G.L. 6A-3-104 Expressly Sanctions inclusion of "Other Charges" In the Promise or Order

R.I.G.L. §6A-3-104 defines a negotiable instrument, in relevant part, as an "unconditional promise or order to pay a fixed amount of money, with or without interest or *other charges (emphasis added)* described in the promise or order." The phrase "other charges" is not otherwise defined or restricted elsewhere in the statutory framework of the Code in general or in Article 3 in particular (R.I.G.L. § 6A-3-101, et seq.). Where, as here, the statute is clear and unambiguous the Court must ascribe to such phrase its plain and ordinary meaning. *In re Kapsinow,* 220 A.3d 1231, 1234 (2019). Attorneys' fees and costs fall squarely within the plain and ordinary meaning of "other charges" and are thus expressly authorized by § 6A-3-101.

The statute's unambiguous statement that a negotiable instrument can contain interest or other charges described in the promise or order explains the paucity of reported cases since the Code's adoption across the country in the late 1950s and early 1960s in which a promissory note's negotiability has been challenged based on the note's inclusion of a provision for the recovery of attorneys' fees and costs from the obligor. See *Ward v. Stanford,* 443 S.W.3d 334, 342-344 (Tex. App. 2014) (Negotiability of "Renewal Note" challenged on the basis that earlier note contained a particular formula for determining the amount of attorneys' fees for which the obligor would be

*Valdera et al.*
*v.*
*PHH et al.*

Page **14** of **30**

*D's Memorandum of Law ISO*
*Motion for Summary Judgment*
*Docket # 1:20-CV-00470-JJM-PAS*

liable while the Renewal Note, which also contained a provision for attorneys' fees, dispensed with the formula. The party challenging negotiability argued that reference to both the original note and the Renewal Note was necessary to determine the amount of attorneys' fees owed, thereby defeating negotiability of the Renewal Note. Citing the provision in the Renewal Note stating that the Renewal Note "amends and wholly restates" the earlier note, the court in *Ward* rejected the challenge and concluded that "the Renewal Note is negotiable." The mere fact that the Renewal Note contained a provision for attorneys' fees at all was never raised as an issue to the negotiability of the Renewal Note). See also *Cole v. Davis,* 63 N.E.3d 946, 407 Ill.Dec. 514 (Ill App. 2016) (note containing confession of judgment clause "for such sum as may appear to be due and unpaid hereon, together with interest, costs and reasonable attorneys' fees" found to be a negotiable instrument).

> *Deutsche Bank is the Holder of the Negotiable Note because the Note is Indorsed in Blank By the Original Lender and Deutsche Bank has possession of it; Deutsche Bank is thus Entitled to Enforce the Note and the Default Remedies in the Mortgage that Secures the Note*

R.I.G.L § 6A-1-201(b)(21) states that "holder" means "(A) [t]he person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession." When indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specifically indorsed. R.I.G.L. § 6A-3-205 (b). Here, the Note is indorsed in blank by the Lender named in the instrument, New Century Mortgage Corporation, and Deutsche Bank or its designated document custodian is in possession of it [Affidavit of Sergio Olmo, Contract Management Coordinator with PHH, ¶¶ 8 and 10]. Deutsche Bank is therefore the holder of the instrument and a person entitled to enforce it as provided in R.I.G.L. § 6A-3-301. Deutsche Bank, through counsel, will be prepared to produce the original

*Valdera et al.*
*v.*
*PHH et al.*

Page **15** of **30**

*D's Memorandum of Law ISO*
*Motion for Summary Judgment*
*Docket # 1:20-CV-00470-JJM-PAS*

Note containing a single indorsement in blank by New Century at any hearing held on its Motion for Summary Judgment.

As holder of the Note and the Mortgage securing the Note Deutsche Bank is entitled to enforce the default remedies provided for in the Mortgage including, but not limited to, the statutory power of sale.  See *Bucci v. Lehman Bros. Bank, FSB,* 68 A.3d 1069, 1088 (2013).[6]

### Even if the Note is deemed Non-negotiable the Right to Enforce it has been Properly transferred to Deutsche Bank by Indorsement and Delivery of Possession

As the Plaintiffs suggest in their Memorandum in Support of Temporary Restraining Order, (pg. 17) Article 9 of the U.C.C. does, in fact, govern the transfer of *ownership* of all notes, "whether they are negotiable or not." *Id.,* at pg. 96.  Negotiability is not an essential quality of a promissory note. Sibley v. Phelps, 60 Mass. 172, 173 (1850). The common ground with the Plaintiffs, however, ends here.  As one commentator has observed:

> "Everything Article 9 tell us about notes applies irrespective of their negotiability: how to transfer their ownership (either by written document of assignment or delivery of possession), how to perfect when they are sold (perfection is automatic), and how to attach and perfect transfers of real estate security along with them (once again, it's automatic) … Hence there is less to talk about on the topic of transferring nonnegotiable notes than we might have expected.  The only real issue remaining is how to deal with transfers of the right to enforce, or even whether such transfers ought to receive separate treatment from transfers of ownership at all.

> Since there is no uniform statute or code governing transfers of the right of enforcement of nonnegotiable notes, we must turn to case law.  As we have already noted, the cases are mostly old (i.e., the late Nineteenth to mid Twentieth Centuries) and draw no distinction between ownership and the right of enforcement, but consistently treat the two sets of rights in a unitary manner.  But even though they regard ownership and the right to enforce as coextensive, we focus here on the cases addressing the right of enforcement, rather than cases in which ownership is the issue.

---

[6] Citing with approval "Restatement (Third) *Property (Mortgages)* § 5.4(c) at 380 (1997), which provides that 'a mortgage may be enforced only by, *or on behalf of,* a person who is entitled to enforce the obligation the mortgage secures." *Bucci,* 68 A.3d 1088 (2013).

*Valdera et al.*
*v.*                                    Page **16** of **30**
*PHH et al.*

*D's Memorandum of Law ISO*
*Motion for Summary Judgment*
*Docket # 1:20-CV-00470-JJM-PAS*

> *The overwhelming impression one gains from these cases is that all agree that the right to enforce a nonnegotiable note can be transferred in exactly the same way as a negotiable note – by indorsement (if the note is bearer paper and delivery ... (emphasis added).*"

*Transferring Nonnegotiable Mortgage Notes,* by Dale A. Whitman, Florida A & M University Law Review, Vol. 11, No. 1, Art. 8, at pages 63-100, 97-98 Fall 2015 [A copy of this Article is attached here at <u>Exhibit B</u>] (citations to footnotes omitted).

Plaintiffs aver in their Complaint that the Note was bought and sold several times in its journey from New Century to the current owner, Deutsche Bank [i.e., from New Century to CBA Commercial, LLC to CBA Commercial Assets, LLC to Deutsche Bank]. Plaintiffs allege without citation to any supporting authority in Article 9 or elsewhere that Article 9 "requires proof of each sale of the note from New Century."

The very definition of an "instrument" as it is contained in Article 9, R.I.G.L. § 6A-9-102(47) does not support Plaintiffs' position: "instrument … means a negotiable instrument or *any other writing* that evidences a right to the payment of a monetary obligation … *and is of a type that in the ordinary course of business is transferred by delivery with any necessary indorsements or assignments (emphasis added).* A promissory note, even if non-negotiable, most assuredly evidences a right to the payment of a monetary obligation and thus fits squarely within Article 9's definition of an "instrument."

Though relatively sparse, recent case law addressing the manner of transferring the right to enforce a non-negotiable "instrument" leans in favor of recognizing customary transfer practices (including transfer by indorsement and delivery of possession) in the industry and thereby facilitating modern commerce rather than inhibiting it.

In *McFarland v. Brier,* 850 A.2d 965, 975, 54 UCC Rep Serv 2d 74 (R.I. 2004), the Rhode Island Supreme Court found that a certificate of deposit marked with the legend "nontransferable"

*Valdera et al.*
*v.*
*PHH et al.*

Page **17** of **30**

*D's Memorandum of Law ISO*
*Motion for Summary Judgment*
*Docket # 1:20-CV-00470-JJM-PAS*

was nevertheless transferable by delivery of possession and indorsement because it was an "instrument" within the meaning of §6A-9-102(47). Nonnegotiable notes, like certificates of deposit, are "instruments", i.e., writings evidencing a right to the payment of money "that are transferred by delivery in ordinary course of business with any necessary endorsements." This is evident from the express terms of the Pooling and Servicing Agreement pursuant to which Deutsche Bank acquired ownership of the Commercial Loan at issue in this case [Statement, ¶12; Olmo Affidavit, ¶ 14 and Exhibit K to same]. Specifically, CBA Commercial Assets, LLC, the Depositor and Seller designated in the PSA, agreed to "assign, sell, transfer and set over" to the Trustee the Mortgage Loans (including the Mortgage Files accompanying such Loans) identified in the Mortgage Loan Schedule accompanying the PSA [PSA, Section 2.01(a)]. In Section 1.01, the PSA defines "Mortgage File" as containing, inter alia:

> (i) "the original Note…bearing, or accompanied by, all prior intervening *endorsements* or assignments showing a complete chain of endorsement or assignment from the applicable Mortgage Loan Originator[7] either in blank or to the Seller, *and further endorsed* (at the direction of the Depositor given pursuant to the Mortgage Loan Purchase Agreement) by the Seller, *on its face or by allonge* attached thereto, without recourse, to the order of the Trustee in the following form: "*Pay to the order of Deutsche Bank National Trust Company, as trustee for the registered Holders of CBA Commercial Assets, Small Balance Commercial Mortgage Pass-Through Certificates, Series 2006-1, without recourse, representation or warranty, express or implied (emphasis added)*"

The PSA clearly reflects an industry custom, practice and expectation that the right to enforce the promissory notes that were being acquired pursuant to the PSA could and would be transferred by "endorsement" and delivery of possession.

---

[7] "Mortgage Loan Originator" is defined in the PSA as "any institution that originated a Mortgage Loan."

*Valdera et al.*
*v.*
*PHH et al.*

Page **18** of **30**

*D's Memorandum of Law ISO*
*Motion for Summary Judgment*
*Docket # 1:20-CV-00470-JJM-PAS*

As Whitman, *supra* notes, "[a]s a practical matter, there is little functional difference between secondary market sales of negotiable and nonnegotiable notes, despite the formal distinctions outlined above between Article 3 and the common law." *Whitman, supra* at 100.

The non-negotiable promissory note at issue in this case is like the certificate of deposit at issue in *McFarland* and was transferred through delivery with an endorsement in blank and possession. As noted by the Rhode Island Supreme Court in *McFarland,* such a conclusion is consistent with "one of the underlying purposes of the U.C.C." which is "to effectuate customary business practices, not thwart them." *McFarland,* supra at 976.

Consistent with the Rhode Island Supreme Court's holding in *McFarland,* indorsement in blank by New Century and delivery of possession to Deutsche Bank were sufficient to transfer ownership of the Note and the right to enforce it to Deutsche Bank even if the Court were to determine that the Note is non-negotiable.

The Plaintiffs maintain that the Defendants must present proof of sale for each sale of the Note. (Valdera Aff. 23). Plaintiffs assert that the Note was transferred from New Century to CBA Commercial LLC, then from CBA Commercial LLC to CBA Commercial Assets, LLC and finally from CBA Commercial Assets, LLC to Deutsche Bank. (Valdera Aff. ¶24-26). Plaintiffs allege that there is no documentation which verifies the transfers.

Deutsche Bank maintains that it is not necessary to produce evidence of the sale of the *ownership* of the Note because it has possession of the Note indorsed in blank by New Century to Deutsche Bank and because such indorsement coupled with delivery of the Note to Deutsche Bank was sufficient to transfer the right to enforce the Note under Article 9 consistent with our Supreme Court's opinion in *McFarland.*

*Valdera et al.*
*v.*                                    Page **19** of **30**
*PHH et al.*

*D's Memorandum of Law ISO*
*Motion for Summary Judgment*
*Docket # 1:20-CV-00470-JJM-PAS*

Notwithstanding, Deutsche Bank has filed herewith the supporting affidavit of Sergio Olmo with contains execution copies as contained in its loan servicer's business records of (a) the Mortgage Loan Purchase Agreement dated April 1, 2006 between CBA Commercial, LLC as Seller and CBA Commercial Assets, LLC as Purchaser and (b) the Pooling and Servicing Agreement dated April 1, 2006 between CBA Commercial Assets, LLC as Depositor and Deutsche Bank as Trustee together with a redacted copy of the Mortgage Loan Schedule referenced in the MLPA and the PSA and listing the Commercial Loan at issue here as among the loans included in such sales (Olmo Aff. ¶13,14, Exhibits J and K).

 Thus even if the Court were to conclude (a) that the Note is non-negotiable and (b) that it must be transferred by *assignment (rather than indorsement/endorsement)* and delivery of possession, Deutsche has produced the documents pursuant to which the Commercial Loan was assigned by CBA Commercial, LLC to CBA Commercial Assets, LLC ("Assets") [See the MLPA, Section 4 (a) "The Seller does hereby sell, transfer, assign and set over and convey to the Purchaser…all of its right, title and interest in, to and under the Mortgage Loans"] and then by Assets to Deutsche Bank [PSA, Section 2.01 (a) "The Depositor…, does hereby assign, sell, transfer, set over and otherwise convey to the Trustee"].

Although neither Deutsche Bank nor PHH is able to find an execution copy of the agreement or agreements pursuant to which New Century transferred ownership of the Commercial Loan to CBA Commercial, LLC in their business records, the New Century Liquidating Trust failed, despite being duly served, to appear in the Declaratory Judgment Action to dispute Deutsche Bank's status as holder of the Note and the party entitled to an equitable assignment of the Mortgage despite the fact that Deutsche Bank specifically asserted in its complaint filed in that action that it was the holder of the Note.

*Valdera et al.*
*v.*
*PHH et al.*

Page **20** of **30**

*D's Memorandum of Law ISO*
*Motion for Summary Judgment*
*Docket # 1:20-CV-00470-JJM-PAS*

## II.

## PHH AND DEUTSCHE ARE ENTITLED TO SUMMARY JUDGMENT ON COUNT II

### Count II asserting a violation of §34-27-3.1 is Moot because the November 4, 2020 Foreclosure Sale was Enjoined by Previous Order Entered in this Action and Thus Canceled; the Statute Otherwise does not provide for damages or an award of Attorneys' Fees and Costs

Count II of Plaintiffs' Complaint is styled "Violation of the Provisions of Rhode Island General Laws § 34-27-1" seeks a declaration "that Deutsche Bank's mailing a Notice of Sale to the Plaintiffs scheduling a foreclosure sale of the Plaintiffs' Property on November 4, 2020 was invalid and void for failure to comply with R.I.G.L. §34-27-1 and further requests that the Court "[g]rant Plaintiffs attorney fees and costs" [Compl., pg. 12, Count II prayers for Relief].

To the extent Plaintiffs seek a declaration that Deutsche Bank's notices of sale were "invalid and void" the request is moot in that Deutsche Bank, through undersigned counsel's office, caused such sale to be canceled in the wake of Judge McElroy's previous order in this case enjoining such sale.  Moreover, the statute does not provide for damages or an award of attorneys' fees and costs for violations of the statute. Rather, § 34-27-3.1 simply states that the mortgagee's failure to render the requisite notice "shall render the foreclosure void without prejudice to the mortgagee to reexercise its power of sale upon compliance with this section". Accordingly, Count II fails to state a claim upon which further relief may be granted by this Court.

Even if Count II raises a cognizable claim, Deutsche Bank sent the notices required by § 34-27-3.1 before mailing the Plaintiffs notices of the scheduled November 4, 2020 foreclosure sale.

Plaintiffs allege in Count II that the Deutsche Bank did not provide a "Notice of Foreclosure Counseling" to the Plaintiffs pursuant to R.I. Gen Laws §34-27-3.1 with respect to the

*Valdera et al.*
*v.*                    Page **21** of **30**
*PHH et al.*

*D's Memorandum of Law ISO*
*Motion for Summary Judgment*
*Docket # 1:20-CV-00470-JJM-PAS*

Notice of Sale scheduled for September 11, 2020[8]."  Count II is not brought against PHH.  R.I.

Gen Laws 34-27-3.1 governs foreclosure counseling and provides as follows:

> (a) "No less than forty-five (45) days prior to initiating any foreclosure of real estate pursuant to subsection 34-27-4(b)[9], the mortgagee shall provide to an "individual consumer mortgagor"[10] written notice of default and the mortgagee's right to foreclose by first class mail…
> (b) The written notice required by this section shall be in English and Spanish and…shall advise the mortgagor of the availability of counseling through HUD-approved mortgage counseling agencies…
> (c) Failure of the mortgagee to provide notice to the mortgagor as provided herein shall render the foreclosure void, without limitation of the right of the mortgagee thereafter to reexercise its power of sale or others means of foreclosure upon compliance with this section.  The mortgagee shall include in the foreclosure deed an affidavit of compliance with this section.
> (d) As used herein and in this chapter, 'HUD' means the United States Department of Housing and Urban Development and any successor to such department."

The Defendant, through its foreclosure counsel, mailed a "Notice of Foreclosure

Counseling" on May 29, 2020 to the Plaintiffs at various addresses as well as to their counsel.

(Affidavit of Susan W. Cody ("Cody Aff."), Foreclosure Counsel ¶¶9 - 13, and Exhibits B and C

to same.)   The forty-five-day statutory period under R.I. Gen Laws §34-27-3.1 expired on July

13, 2020.  Deutsche Bank requests that the Court take judicial notice that May 29, 2020 plus forty-

five days is July 13, 2020. The Notice of Sale was mailed on July 17, 2020 [Cody Affidavit, ¶14].

The Plaintiffs contend that the statute requires a Notice of Foreclosure Counseling to be

mailed forty-five days before the sale date when, in fact, the requirement is for the Notice of

---

[8] In Paragraph 40 of the Complaint, it is alleged that a Notice of Foreclosure Counseling was not provided to the Plaintiffs at least 45 days prior to September 11, 2020.  The foreclosure sale was scheduled for September 10, 2020 and not September 11, 2020. In Paragraph 43 of the Complaint, Plaintiff incorrectly alleges that a sale was scheduled for September 19, 2020. Additionally, in Paragraph 44, the Complaint alleges that Juan Valdera was not provided a Notice of Foreclosure Counseling at his home address at least 45 days prior to July 17, 2020.

[9] 34-27-4(b) governs the mailing of the foreclosure sale notice and requires it to be sent twenty days prior to the first publication of the mortgagee's notice of foreclosure sale.

[10] The definition section of The State of Rhode Island, Department of Business Regulation, Division of Banking, Banking Regulation 5, Mortgage Foreclosure Disclosure, defines "individual consumer mortgagor" to include all natural persons regardless of whether the loan proceeds are used for business or personal purposes.

*Valdera et al.*                                        *D's Memorandum of Law ISO*
*v.*                          Page **22** of **30**          *Motion for Summary Judgment*
*PHH et al.*                                                 *Docket # 1:20-CV-00470-JJM-PAS*

Foreclosure Counseling to be mailed no less than 45 days prior to "initiating any foreclosure pursuant to subsection 34-27-4(b)". This means that the Notice of Foreclosure Counseling must be mailed no less than 45 days prior to the mailing of the notice of sale to the mortgagors.  Juan Valdera executed a certified mail "green card" on June 3, 2020 which indicates that he did, in fact, receive the Notice of Foreclosure Counseling despite his assertion(s) to the contrary. (Cody Affidavit. ¶13, Exhibit D).   The Defendants have presented competent evidence in the form of an affidavit together with copies of the "Notice of Foreclosure Counseling" dated May 29, 2020, a Declaration of Mailing and certified mail receipt(s) bearing postmarks and signed by Juan Valdera. The Plaintiffs cannot rest on their naked assertion that the Notice was not sent to Juan Valdera.

Finally, in their prayer for relief on Count II, Plaintiffs seek a declaration that the mailing of the Notice of Sale for the November 4, 2020 foreclosure sale was invalid due to Deutsche Bank's alleged failure to comply with R.I. Gen. Laws. §34-27-3.1. Statutory construction dictates that words in a statute be given their plan and ordinary meaning when the statute is clear and unambiguous. *In re Kapsinow,* 220 A.3d 1231, 1234 (2019).  The statute clearly states that "no less than forty-five says prior to initiating any foreclosure of real estate…the mortgagee shall provide…a written notice of default and the mortgagee's right to foreclose.  Here, Deutsche Bank mailed the Foreclosure Counseling Notices to the Plaintiffs on May 29, 2020 and thus 104 days before it mailed notices of foreclosure sale to the mortgagors on September 11, 2020 for a November 4, 2020 sale date (Cody Affidavit. ¶9). See *Brown v. Bank of America Corporation,* Memorandum and Order dated September 15, 202, Case No. 1:19-cv-00327-MSM-LDA (D.R.I. 2021)(finding foreclosing mortgagee had "complied with the statute and provided the § 34-27-3.1 notice when it was mailed on October 4, 2018, at least 71 days before it sent the notice of foreclosure sale").

*Valdera et al.*
*v.*                                      Page **23** of **30**
*PHH et al.*

*D's Memorandum of Law ISO*
*Motion for Summary Judgment*
*Docket # 1:20-CV-00470-JJM-PAS*

## III.

### PLAINTIFF'S BREACH OF CONTRACT AND BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING COUNT (III) FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

Count III of the Complaint alleges that the Deutsche Bank breached its contract with the Plaintiffs and breached the "covenant of good faith and dealing" [sic] because Deutsche Bank allegedly (a) did not have the right to exercise the power of sale in the mortgage and (b) did not strictly comply with R.I. Gen Laws § 34-27-3.1 and therefore did not strictly comply with the exercise of the statutory power of sale pursuant to § 34-27-4(b).  Deutsche Bank relies on its arguments in Sections I and II of this Memorandum to refute each of these claims.

Aside from claiming that Juan Valdera did not receive a Foreclosure Counseling Notice ("FCN") despite the overwhelming evidence presented here by Deutsche Bank, the Plaintiffs also appear to be asserting that because Deutsche Bank canceled the foreclosure sale it had scheduled for September 10, 2020 after having received the Plaintiffs' debt dispute notice on August 15, 2020, it had to send a *new* FCN 45 days before sending notices to the Plaintiffs advising them of a new sale date.  An FCN that would have contained the exact same information as the FCN mailed to the Plaintiffs by Deutsche Bank's attorneys on May 29, 2020.

First, there is no such express requirement in the statute nor is Deutsche Bank aware of any case law interpreting § 34-27-3.1 in this fashion.  Moreover, even if the Court were to interpret the statute in the manner advocated by the Plaintiffs, it can hardly be said that Deutsche Bank did not act in good faith (a) given the absence of any express requirement in the statute that an FCN notice be reissued even if a new sale is scheduled on the heels of a prior sale having been canceled or any case law interpreting the statute in such a manner and, more importantly, (b) given that the previous sale date of September 10, 2020 was canceled to allow Deutsche Bank and PHH time to issue (and

*Valdera et al.*
*v.*                                Page **24** of **30**
*PHH et al.*

*D's Memorandum of Law ISO*
*Motion for Summary Judgment*
*Docket # 1:20-CV-00470-JJM-PAS*

they did in fact issue[11]) a comprehensive reply to the Plaintiffs' debt dispute and to allow the Plaintiffs a fair opportunity to review same before conducting a foreclosure sale.

Finally, even if the Plaintiffs' statutory interpretation is correct, they have failed to allege and cannot in any event put forth any competent evidence that they have suffered any actual damages because of Deutsche Bank not having issued the same FCN in advance of the November 4, 2020 sale date as had been sent to the Plaintiffs on May 29, 2020. Their claims of having suffered "emotional damages for embarrassment and humiliation by the advertising of a foreclosure" ring particularly hollow. Even under the Plaintiffs' interpretation, Deutsche Bank sent a timely and conforming FCN in advance of issuing sale notices for the September 10, 2020 scheduled sale. The mortgagee's notice of sale was published in advance of that first sale date. Republishing a new sale notice could not have caused Plaintiffs any measurable "embarrassment or humiliation" over and above what they experienced in the wake of publications made in advance of the prior sale dates. Plaintiffs' own actions in failing to have paid on their mortgage obligations for more than nine (9) years invited the foreclosure activity of which they now complain.

## IV.

### PHH IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' FDCPA COUNT BECAUSE THE OBLIGATION EVIDENCED BY THE NOTE AND MORTGAGE IS NOT A "DEBT" AS DEFINED IN 15 U.S.C. § 1692a(5)

The Plaintiffs' Complaint alleges that *PHH* violated the Fair Debt Collection Practices Act, 15 U.S.C. §1692 ("FDCPA"), specifically 15 U.S.C §1692 (d), (e), and (f). The Plaintiffs' FDCPA claims are based upon (a) the scheduling of a mortgage foreclosure sale on September 11, 2020[12] without purportedly sending the "Notice of Foreclosure Counseling" required by R.I. Gen. Law

---

[11] Deutsche Bank and PHH, through counsel, issued a comprehensive response to the debt dispute on September 3, 2020.
[12] The actual foreclosure sale date cited in the Notice of Intent to Foreclose Mortgage mailed on July 17, 2020 was September 10, 2020 and not September 11, 2020 as suggested in the Plaintiffs' complaint ¶72.

*Valdera et al.*
*v.*                                    Page **25** of **30**
*PHH et al.*

*D's Memorandum of Law ISO*
*Motion for Summary Judgment*
*Docket # 1:20-CV-00470-JJM-PAS*

§34-27-3.1, (b) the mailing of a Notice of Foreclosure Sale dated September 11, 2020 for a sale date of November 3, 2020 and (3) threatening to take legal action that PHH could not pursue on behalf of Deutsche Bank on account of it not being the holder of the Note.

### The FDCPA Does Not Apply to Commercial Purpose Loans

The purpose of the FDCPA statute is to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent state action to protect consumers against debt collection abuses. 15 U.S.C. §1692. "The basic premise of the statutory scheme of the FDCPA is that its prophylaxis applies in connection with the collection of debts." *Arruda v. Sears, Roebuck & Co.*, 310 F.3d 13, 23 (1st Cir. 2002). The FDCPA applies only to "consumer" obligations and not to commercial obligations. The statute defines a consumer as any natural person obligated or allegedly obligated to pay any debt. The term "debt" means "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are *primarily for personal, family, or household purposes (emphasis added)*, whether or not such obligation has been reduced to judgment". 15 U.S.C. § 1692(a)(5).

> *Plaintiffs signed Affidavits Attesting to the Fact that the Commercial Loan was Made Primarily for Busines or Commercial Purposes and that the Loan Proceeds Would Not Be Used for Personal, Family or Household (consumer) Purposes*

The loan obtained by the Plaintiffs from New Century was a commercial loan for the purchase of a six-unit apartment complex per the origination appraisal. (Affidavit of Sergio Olmo, ¶7, Exhibit A). The loan application submitted by the Plaintiffs contains a section with checkboxes where an applicant would indicate if the property is for a primary residence, secondary residence or purchased as an investment. The "investment" checkbox is indicated on the loan applications

*Valdera et al.*
*v.*
*PHH et al.*

Page **26** of **30**

*D's Memorandum of Law ISO*
*Motion for Summary Judgment*
*Docket # 1:20-CV-00470-JJM-PAS*

signed by each of the Plaintiffs. (Olmo Aff. ¶8, Exhibit D).  Additionally, each of the Plaintiffs executed "Affidavits of Commercial Purpose" attesting to the fact that the loan was obtained by them primarily for "business or commercial purposes". (Olmo Affidavit, ¶9, Exhibit E.)  Paragraph 2 and 3 of the "Affidavit of Commercial Purpose" as signed by each of the Plaintiffs states *"I have been informed that loans made to an individual primarily for personal, family or household (consumer) purposes are subject to certain federal and state consumer protection laws, but that these laws will not apply to my Loan based on my representations below; 3. My loan is primarily for business or commercial purposes, and I will not use the proceeds of my Loan for personal, family, or household (consumer) purposes*" (italics added for emphasis).  Any self-servicing attempt now by Plaintiffs some fifteen years later to recharacterize the loan as one primarily for personal, family or household purposes should not be credited.

The Maine Superior Court recently addressed a similar situation with a FDCPA count brought against a noteholder in the matter of *Devgru Financial, LLC v. Ladoka*, Docket CV-19-175 (ME. Super. 2020). The Court found that the FDCPA did not apply to a commercial loan where the "investment" checkbox was elected on the loan application and that mortgagor's affidavit expressing an intent to use the property as a primary residence did not create a genuine issue of material fact since it was not the mutual intent of the parties as nothing indicated that the loan was contemplated as being for "personal, family, or household purposes".  Here, each of the Plaintiffs executed an affidavit which expressly acknowledged the "business or commercial purpose" of the loan and an express representation that the loan proceeds would *not* be used for personal, family or household purposes.

Plaintiffs' FDCPA count against PHH necessarily fails because the obligation evidenced by the Note and Mortgage is not a "debt" within the meaning of 15 U.S.C. § 1692a(5).  Even if the

*Valdera et al.*
*v.*
*PHH et al.*

Page **27** of **30**

*D's Memorandum of Law ISO*
*Motion for Summary Judgment*
*Docket # 1:20-CV-00470-JJM-PAS*

obligation were a "debt" as defined in the preceding subsection of the FDCPA, PHH committed

no conduct that runs afoul of the Act.  Plaintiffs assert in their Complaint in relevant part that:

> "73. PHH, through its attorney, has threatened to commence and has
> claimed to have commenced a non-judicial foreclosure to effect
> dispossession of the Plaintiffs of their property even though PHH and
> Deutsche Bank had no present right to possession of the property claimed
> as collateral through an enforceable security interest.
> 70. [sic][13]It also made a threat to take legal action which could not legally
> be taken, namely exercise the statutory power of sale and seek a deficiency
> judgment against the Plaintiffs in the event that the foreclosure sale will be
> insufficient to cover the amount due on the loan.
> 71. Specifically it stated, through its attorney, by the letter dated September
> 11, 2020 that a Mortgage Foreclosure sale of the Plaintiff's property would
> occur on November 3, 2020.
> 72. The threat to conduct a Mortgage Foreclosure Sale on September 11,
> 2020 was deceptive action of the part of PHH due to the failure to provide
> a Notice of Foreclosure Counseling and not being the owner of the note…
> 77. PHH made false representations regarding the character and legal status
> of the debt, namely that Deutsche Bank was the holder of the note and that
> Deutsche Bank could exercise the statutory power of sale."

Contrary to the allegations made in ¶ 71 of the Complaint above, the September 11, 2020

foreclosure notices sent by Korde & Associates, P.C. on behalf of "the Holder of the Mortgage"

make no reference to PHH nor does the "Mortgagee's Sale of Real Estate Notice" in included with

such notices.  Also contrary to the inference raised by ¶ 72 above, PHH had no duty to send

Foreclosure Counseling Notices to the Plaintiffs.  Rather, by the express terms of § 34-27-3.1, that

responsibility falls on the "mortgagee".  And, in any event, Deutsche Bank as the "mortgagee"

provided Foreclosure Counseling Notices to the Plaintiffs in the time and manner required by §

34-27-1.  Finally, PHH did not misrepresent the character and legal status of the debt because

Deutsche was and remains the holder of the note and holder of the mortgage and thus entitled to

exercise the default remedies provided for in the Note.

---

[13] After the first paragraph no. "73" in their Complaint, Plaintiffs number subsequent paragraphs starting with the number "70."

*Valdera et al.*
*v.*                                    Page **28** of **30**
*PHH et al.*

*D's Memorandum of Law ISO*
*Motion for Summary Judgment*
*Docket # 1:20-CV-00470-JJM-PAS*

## V.

### Count V of the Complaint for a Preliminary Injunction Fails to State
### A Substantive Claim Upon which Relief May be Granted

Count V of Plaintiffs' Complaint for a preliminary injunction fails to state a substantive claim upon which relief may be granted.  A preliminary injunction is a remedy rather than a cognizable cause of action under Rhode Island or federal law. See *North Farm Home Owners Association, Inc. v. Bristol County Water Authority,* C.A. No. PC-2017-4623, Decision dated Aug. 16, 2018, Silverstein, J. (R.I. Super 2018)("the Court has articulated on numerous occasions that 'injunctive relief is not an independent cause of action; rather, injunctive relief is a remedy and, cannot, in itself, be recognized as a substantive claim'" – further citations omitted); see also *Pearson v. Bank of N.Y. Mellon,* C.A. No. 14-12359, Memorandum of Decision dated August 4, 2014 (D.Mass.2014) ("'injunctive relief' is not an independent cause of action" – pg. 7) Accordingly, Plaintiffs are entitled to summary judgment on Count V of the Complaint. Moreover, the relief sought is now moot in that the November 4, 2020 foreclosure sale was canceled and no new foreclosure sale of the Property has been scheduled, noticed or advertised.

> *Summary Judgment Should be Awarded to Defendants on Counts I-V and Any Injunction Previously Granted to Plaintiffs Under Count V Dissolved*

The Defendants hereby request that the Court vacate the temporary restraining order and enter judgment in favor of the Defendants for the reasons stated above in the memorandum which are incorporated herein by reference.

*Valdera et al.*
*v.*
*PHH et al.*

Page **29** of **30**

*D's Memorandum of Law ISO*
*Motion for Summary Judgment*
*Docket # 1:20-CV-00470-JJM-PAS*

Dated:  January 20, 2022

Respectfully submitted,
PHH Mortgage Corporation and Deutsche
Bank National Trust Company as Trustee for
The Registered Holders of CBA Commercial
Assets, Small Balance Commercial Mortgage
Pass-Through Certificates, Series 2006-1,
By their attorney,

/s/_John S. McNicholas_____
John S. McNicholas, Esq. RIB # 8732
Catherine V. Eastwood, Esq. RIB # 6406
Korde & Associates, P.C.
900 Chelmsford Street, Suite 3102
Lowell, MA 01851
(978) 256-1500 (ext. 26203)
jmcnicholas@kordeassociates.com
ceastwood@kordeassociates.com

## CERTIFICATE OF SERVICE

I hereby certify that this document was filed through the CM/ECF system and will be sent

electronically to the registered participants as identified on the Notice of Electronic Filing ("NEF")

and paper copies will be sent to those indicated as non-registered participants via first class mail

on January 20, 2022.

*The document electronically filed and served is available for viewing and/or downloading*

*from the United States District Court's Electronic Filing System.*

/s/ John S. McNicholas_____
John S. McNicholas, Esq, RIB # 8732

*Valdera et al.*                                               *D's Memorandum of Law ISO*
*v.*                          Page **30** of **30**          *Motion for Summary Judgment*
*PHH et al.*                                               *Docket # 1:20-CV-00470-JJM-PAS*