# EXHIBIT

# J

# MORTGAGE LOAN PURCHASE AGREEMENT

THIS MORTGAGE LOAN PURCHASE AGREEMENT (this "Agreement"), dated as of April 1, 2006, between CBA Commercial Assets, LLC, a Delaware limited liability company (the "Purchaser"), and CBA Commercial, LLC, a Delaware limited liability company (the "Seller").

## Preliminary Statement

The Seller intends to sell certain fixed rate and adjustable rate multifamily, commercial, and mixed-use mortgage loans, including balloon payment loans, to the Purchaser on the terms and subject to the conditions set forth in this Agreement.  The Purchaser intends to sell such mortgage loans listed on Schedule I attached hereto (collectively, the "Mortgage Loans") and the other assets constituting the Trust Fund; and will assign all of its rights under this Agreement, to Deutsche Bank National Trust Company, as trustee (the "Trustee") pursuant to the Pooling and Servicing Agreement, dated as of April 1, 2006 (the "Pooling and Servicing Agreement"), among the Purchaser, as depositor, the Trustee and GMAC Commercial Mortgage Corporation, as servicer and special servicer (the "Servicer").  Capitalized terms used but not defined herein shall have the meanings set forth in the Pooling and Servicing Agreement.

The parties hereto agree as follows:

Section 1.       Purchase and Contribution.

(a)       Mortgage Loans.  The Seller hereby agrees to sell, and the Purchaser agrees to purchase, on or before April 27, 2006 (the "Closing Date"), the Mortgage Loans; provided, however, that the Purchaser does not assume the obligation under any Mortgage Loan to fund any future advances required to be made to the related obligor or obligors under a related original executed promissory note evidencing the indebtedness of the borrower under a Mortgage Loan, together with any rider, addendum or amendment thereto, or any renewal, substitution or replacement of such promissory note (the "Mortgage Note") thereunder (a "Mortgagor(s)"), and the Purchaser shall not be obligated or permitted to fund any such advances.  Such conveyance includes, without limitation, (i) all interest, other than the related servicing rights, including any prepayment premiums or yield maintenance payments and including prepayment premiums received or receivable by the Purchaser on or with respect to the Mortgage Loans listed on Schedule I attached to the Pooling and Servicing Agreement, and principal received or receivable on or with respect to the Mortgage Loans listed on Schedule I hereto after the close of business on April 1, 2006 (the "Cut-off Date"), but not including interest and principal due and payable on such Mortgage Loans on or before the Cut-off Date; (ii) the related Mortgage Files, (iii) any Insurance Policies, (iv) any Insurance and Condemnation Proceeds, REO Property, Liquidation Proceeds and other recoveries (in each case, subject to clause (i) above), and (v) all income, revenues, issues, products, revisions, substitutions, replacements, profits, rents and all cash and non-cash proceeds of the foregoing, having

an aggregate principal balance as of the Cut-off Date, after giving effect to payments of principal due on or before the Cut-off Date, of approximately $166,804,318.

(b)     [Reserved]

(c)     <u>Assignment of Additional Rights</u>. The Seller hereby assigns to the Purchaser all of the Seller's rights (excluding its obligations) under any written contract for the servicing of the Mortgage Loans to which the Seller becomes a party or a third party beneficiary. The Purchaser shall have the right to enforce any and all of the Seller's rights under each of such servicing agreements as if it were a party thereto, including without limitation, the right to assign such rights to the Trustee, for the benefit of the Certificateholders.

Section 2.     <u>Schedules of Mortgage Loans</u>. The Purchaser and the Seller have agreed upon which of the mortgage loans owned by the Seller are to be purchased by the Purchaser pursuant to this Agreement and the Seller will prepare on or prior to the Closing Date a final schedule describing such Mortgage Loans (the "<u>Closing Schedule</u>"). The Closing Schedule will conform to the requirements of the Purchaser as set forth in this Agreement and to the definition of "<u>Mortgage Loan Schedule</u>" under the Pooling and Servicing Agreement. The Closing Schedule is attached hereto as Schedule I.

Section 3.     <u>Consideration</u>.

(a)     In consideration for the Mortgage Loans to be purchased hereunder and the obligations undertaken by the Seller with respect to the Mortgage Loans, the Purchaser shall, as described in Section 8, pay to the Seller an amount (the "<u>Purchase Amount</u>") equal to the cash portion of the price obtained by the Purchaser as consideration for transfer of the Mortgage Loans to the Trustee.

(b)     [Reserved]

(c)     The Trustee, as assignee of the Purchaser, or any assignee, transferee or designee of the Trustee shall be entitled to all interest including any prepayment premiums or yield maintenance payments and including prepayment premiums received or receivable by the Purchaser on or with respect to the Mortgage Loans allocable to the period commencing after the related Cut-off Date and all scheduled payments of principal due on the Mortgage Loans after the related Cut-Off Date, all other payments of principal collected after the related Cut-off Date (other than scheduled payments of principal due on or before the related Cut-off Date). All scheduled payments of principal and interest due on or before the related Cut-off Date and collected after the related Cut-off Date shall belong to the Seller.

(d)     Pursuant to the Pooling and Servicing Agreement, the Purchaser will assign all of its right, title and interest in and to the Mortgage Loans and the other assets constituting the Trust Fund, together with its rights under this Agreement, to the Trustee, for the benefit of the Certificateholders. The parties hereto agree that the Trustee shall be a third party beneficiary of this Agreement, and the Seller hereby restates its representations, warranties and covenants as set forth herein for the benefit of the Trustee.

The rights of the Trustee as a third party beneficiary shall be irrevocable and coupled with an interest.

Section 4. <u>Transfer of the Mortgage Loans</u>.

(a) <u>Possession of Mortgage Files</u>. The Seller does hereby sell, transfer, assign, set over and convey to the Purchaser, without recourse but subject to the terms of this Agreement, all of its right, title and interest in, to and under the Mortgage Loans. The contents of each Mortgage File not delivered to the Purchaser or to any assignee, transferee or designee of the Purchaser on or prior to the Closing Date are and shall be held in trust by the Seller for the benefit of the Purchaser or any assignee, transferee or designee of the Purchaser. Upon the sale of the Mortgage Loans, the ownership of each Mortgage Note, the related Mortgage, the other documents described in this Section 4 and the other contents of the related Mortgage File shall be vested in the Purchaser and the ownership of all records and documents with respect to the related Mortgage Loan prepared by or that come into the possession of the Seller on or after the Closing Date shall immediately vest in the Purchaser and shall be delivered immediately to the Purchaser or as otherwise directed by the Purchaser. The Seller's records will accurately reflect the sale or contribution, as the case may be, of each Mortgage Loan to and the ownership of each Mortgage Loan by the Purchaser. The Seller shall release its custody of the contents of any Mortgage File only in accordance with written instructions from the Purchaser or any assignee, transferee or designee of the Purchaser.

(b) <u>Delivery of Mortgage Loan Documents</u>. The Seller will, prior to the Closing Date, deliver or cause to be delivered to the Purchaser or any assignee, transferee or designee of the Purchaser the Mortgage File for each Mortgage Loan. The Mortgage File for each Mortgage Loan shall contain the following documents:

(i) the original Note (or a lost note affidavit), bearing, or accompanied by, all prior and intervening endorsements or assignments showing a complete chain of endorsement or assignment from the applicable Mortgage Loan Originator either in blank or to the Seller, and further endorsed (at the direction of the Purchaser given pursuant to this Agreement) by the Seller, on its face or by allonge attached thereto, without recourse, to the order of the Trustee in the following form: "Pay to the order of Deutsche Bank National Trust Company, as trustee for the registered Holders of CBA Commercial Assets, Small Balance Commercial Mortgage Pass-Through Certificates, Series 2006-1, without recourse, representation or warranty, express or implied";

(ii) a duplicate original Mortgage or a copy thereof or, if such Mortgage has been returned by the related recording office, (A) an original, (B) a copy of a certified copy or (C) a copy thereof from the applicable recording office and originals or copies (or originals or copies of certified copies from the applicable recording office) of any assignments thereof showing a complete chain of assignment from the related Mortgage Loan Originator to the Seller, in each case in the form submitted for recording or, if recorded, with evidence of recording indicated thereon;

(iii)     an original assignment of the Mortgage, in recordable form, either in blank or from the Seller (or the Mortgage Loan Originator) to "Deutsche Bank National Trust Company, as trustee for the registered Holders of CBA Commercial Assets, Small Balance Commercial Mortgage Pass-Through Certificates, Series 2006-1";

(iv)     an original or copy of any related Assignment of Leases (if such item is a document separate from the Mortgage) and the originals or copies of any assignments thereof showing a complete chain of assignment from the related Mortgage Loan Originator to the Seller, in each case in the form submitted for recording or, if recorded, with evidence of recording thereon;

(v)     an original assignment of any related Assignment of Leases (if such item is a document separate from the Mortgage), in recordable form, either in blank or from the Seller (or the Mortgage Loan Originator) to "Deutsche Bank National Trust Company, as trustee for the registered Holders of CBA Commercial Assets, Small Balance Commercial Mortgage Pass-Through Certificates, Series 2006-1";

(vi)     an original or copy of any related Security Agreement (if such item is a document separate from the Mortgage) and the originals or copies of any assignments thereof showing a complete chain of assignment from the related Mortgage Loan Originator to the Seller;

(vii)     an original assignment of any related Security Agreement (if such item is a document separate from the Mortgage), either in blank or from the Seller or the related Mortgage Loan Originator to "Deutsche Bank National Trust Company, as trustee for the registered Holders of CBA Commercial Assets, Small Balance Commercial Mortgage Pass-Through Certificates, Series 2006-1," which assignment may be included as part of an omnibus assignment covering other documents relating to the Mortgage Loan; *provided* that such omnibus assignment is effective under applicable law;

(viii)     originals or copies of all (A) assumption agreements, (B) modifications, (C) written assurance agreements and (D) substitution agreements, together with any evidence of recording thereon or in the form submitted for recording, in those instances where the terms or provisions of the Mortgage, Note or any related security document have been modified or the Mortgage Loan has been assumed;

(ix)     the original lender's title insurance policy or a copy thereof (together with all endorsements or riders that were issued with or subsequent to the issuance of such policy), or if the policy has not yet been issued, a binding written commitment (which may be a pro forma or specimen title insurance policy which has been accepted or approved in writing by the related title insurance company) or interim binder that is marked as binding and countersigned by the title company, insuring the priority of the Mortgage as a first lien on the related Mortgaged Property, relating to such Mortgage Loan;

(x)     the original or a counterpart of any guaranty of the obligations of the Borrower under the Mortgage Loan;

4

     (xi)    certified or other copies of all UCC Financing Statements and continuation statements, if any, which show the filing or recording thereof (or copies thereof in the form submitted for filing or recording, along with a certification by the applicable recording or filing office, applicable title insurance company or the Seller that such form was submitted)) sufficient to perfect (and maintain the perfection of) the security interest held by the Mortgage Loan Originator (and each assignee prior to the Trustee) in and to the personalty of the Borrower at the Mortgaged Property, and original UCC assignments in a form suitable for filing or recording, sufficient to transfer such UCC Financing Statements to the Trustee;

     (xii)    the original or copy of the power of attorney, if any, (with evidence of recording thereon) granted by the Borrower if the Mortgage, Note or other document or instrument referred to above was not signed by the Borrower;

     (xiii)    the original or a copy of each guaranty, if any, constituting additional security for repayment of such Mortgage Loan;

     (xiv)    copies of third-party Management Agreements, if any, related to any Mortgage Loan;

     (xv)    an original or counterpart of any Loan Agreement, if any;

     (xvi)    a copy of any affidavit and indemnification agreement in favor of the lender;

     (xvii)    the original environmental indemnity agreement, if any, related to any Mortgage Loan or a copy thereof;

     (xviii)  any environmental insurance policies or copies thereof, if any;

     (xix)    for any Mortgaged Property, copies of the related franchise agreement, if any, and franchisor comfort letters, if any;

     (xx)    the original ground lease, if any, or a copy thereof;

     (xi)    a list related to such Mortgage Loan indicating the related Loan Documents included in the related Mortgage File (the "<u>Mortgage Loan Checklist</u>"); and

     (xxii)   any additional documents required to be added to the Mortgage File pursuant to Section 3.20 of the Pooling and Servicing Agreement.

Whenever the term "Mortgage File" is used to refer to documents actually received by the Trustee, such term shall not be deemed to include such documents and instruments required to be included therein unless they are actually so received.

If the Seller cannot deliver, or cause to be delivered as to any Mortgage Loan, the original Note, the Seller shall deliver a copy or duplicate original of such Note, together with an affidavit

substantially in the form attached as Exhibit G to the Pooling and Servicing Agreement, certifying that the original thereof has been lost or destroyed.

If the Seller cannot deliver, or cause to be delivered, as to any Mortgage Loan, any of the documents and/or instruments referred to in clauses (ii), (iii), (iv), (viii) and (xi) (other than assignments of UCC financing statements to be recorded or filed in accordance with the transfer contemplated by this Agreement) of the definition of "Mortgage File," with evidence of recording or filing thereon, solely because of a delay caused by the public recording or filing office where such document or instrument has been delivered for recordation or filing, the delivery requirements of this Agreement shall be deemed to have been satisfied and such non-delivered document or instrument shall be deemed to have been included in the Mortgage File; *provided* that a photocopy of such non-delivered document or instrument (certified by the applicable public recording or filing office, the applicable title insurance company or the Seller to be a true and complete copy of the original thereof submitted for recording or filing) is delivered to the Trustee on or before the Closing Date, and either the original of such non-delivered document or instrument, or a photocopy thereof (certified by the appropriate public recording or filing office to be a true and complete copy of the original thereof submitted for recording or filing), with evidence of recording or filing thereon, is delivered to the Trustee (with a copy to the Servicer) within 120 days after the Closing Date, which period may be extended up to two times, in each case for an additional period of 45 days provided that the Seller, as certified in writing to the Trustee prior to each such 45 day extension, is in good faith attempting to obtain from the appropriate county recorder's or filing office such original or photocopy.

The Seller agrees to reasonably cooperate with the Trustee, the Servicer, the Special Servicer, and the Depositor in connection with any powers of attorney or revisions thereto that are requested by the Trustee, the Servicer, the Special Servicer, or the Depositor .

If the Seller cannot deliver, or cause to be delivered, as to any Mortgage Loan, any of the documents and/or instruments referred to in clauses (ii), (iii), (iv), (viii) and (xi), and (xii) (other than assignments of UCC financing statements to be recorded or filed in accordance with the transfer contemplated by this Agreement) of the definition of "Mortgage File," with evidence of recording or filing thereon, for any other reason, including, without limitation, that such non-delivered document or instrument has been lost, the delivery requirements of this Agreement shall be deemed to have been satisfied and such non-delivered document or instrument shall be deemed to have been included in the Mortgage File if a photocopy of such non-delivered document or instrument (with evidence of recording or filing thereon and certified by the appropriate public recording or filing office to be a true and complete copy of the original thereof submitted for recording or filing) is delivered to the Trustee on or before the Closing Date.

The Seller shall not organize under the law of any jurisdiction other than the State under which it is organized as of the Closing Date (whether changing its jurisdiction of organization or organizing under an additional jurisdiction) without giving 30 days prior written notice of such action to its immediate and mediate transferee, including the Trustee.  Before effecting such change, the Seller shall prepare and file in the appropriate filing office any financing statements or other statements necessary to continue the perfection of the interests of its immediate and mediate transferees, including the Trustee, in the Mortgage Loans.  In connection with the transactions contemplated by the Basic Documents, the Seller authorizes its immediate or mediate transferee,

including the Trustee, to file in any filing office any initial financing statements, any amendments to financing statements, any continuation statements, or any other statements or filings described in this Section 4(b).

(c)     Acceptance of Mortgage Loans.  The documents delivered pursuant to Section 4(b) hereof shall be reviewed by the Purchaser or any assignee, transferee or designee of the Purchaser at any time before or after the Closing Date (and each document permitted to be delivered after the Closing Date within seven (7) days of its delivery) to ascertain that all required documents have been executed and received and that such documents relate to the Mortgage Loans identified on the Mortgage Loan Schedule. If the Purchaser or any assignee, transferee or designee of the Purchaser discovers that any material document is missing or is defective in any material respect, the Seller shall correct or cure any such omission or defect or shall repurchase or substitute for the affected Mortgage Loan in accordance with the terms of Section 7(a) hereof and Section 2.03 of the Pooling and Servicing Agreement.  At the time of such repurchase, the Purchaser shall, in exchange for a written receipt therefor, release such documents relating to such Mortgage Loan as are then in its possession to the Seller.

(d)     Transfer of Interest in the Agreement.  The Purchaser has the right to assign its interest under this Agreement, in whole or in part, to the Trustee, as may be required to effect the purposes of the Pooling and Servicing Agreement without the consent of the Seller, and the assignee shall succeed to the rights and obligations hereunder of the Purchaser.  Any expense reasonably incurred by or on behalf of the Purchaser or the Trustee in connection with enforcing any obligations of the Seller under this Agreement will be promptly reimbursed by the Seller.

(e)     Examination of Mortgage Files.  Not later than three (3) Business Days prior to the Closing Date, the Seller shall deliver to the Purchaser or to any assignee, transferee or designee of the Purchaser in escrow, for examination, the Mortgage File pertaining to each Mortgage Loan. Such examination may be made by the Purchaser or any assignee, transferee or designee of the Purchaser at any time before or after the Closing Date.  If any such person makes such examination prior to the Closing Date and identifies any Mortgage Loans which do not conform to the requirements of the Purchaser as described in this Agreement, such Mortgage Loans shall be deleted from the Closing Schedule, and may be replaced, prior to the Closing Date, by substitute Mortgage Loans acceptable to the Purchaser. The Purchaser may, at its option and without notice to the Seller, purchase all or part of the Mortgage Loans without conducting any partial or complete examination.  The fact that the Purchaser or any assignee, transferee or designee of the Purchaser has conducted or has failed to conduct any partial or complete examination of the Mortgage Files shall not affect the rights of the Purchaser or any assignee, transferee or designee of the Purchaser to demand repurchase or other relief as provided herein or under the Pooling and Servicing Agreement.

Section 5.     Representations and Warranties of the Seller.  The Seller hereby represents and warrants to the Purchaser that as of the Closing Date:

(a)      The Seller is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Delaware and has full power and authority (i) to conduct its business as presently conducted by it and (ii) to execute and deliver this Agreement and perform its obligations under this Agreement.  The Seller is and will remain in compliance with the laws of each state in which any Mortgaged Property is located to the extent necessary to perform its obligations in respect of this Agreement.

(b)      The execution and delivery of this Agreement, the performance by the Seller of its obligations hereunder and the consummation of the transactions contemplated hereby have been duly authorized by all necessary action on the part of the Seller.  This Agreement has been duly executed and delivered by the Seller and constitutes a legal, valid and binding obligation of the Seller, enforceable in accordance with its respective terms subject to bankruptcy, insolvency, reorganization or similar laws affecting the enforcement of creditors' rights generally and to general principles of equity and public policy considerations underlying the securities laws, to the extent that such public policy considerations limit the enforceability of the provisions of this Agreement which purport to provide indemnification from securities laws liabilities.

(c)      The execution, delivery and performance of this Agreement by the Seller, and the consummation of the transactions contemplated hereby, will not (i) violate or conflict with any provision of the limited liability company agreement of the Seller or any law, rule, regulation, order, judgment, award, administrative interpretation, injunction, writ, decree or the like affecting the Seller or by which the Seller is bound or (ii) result in a breach of or constitute a default (or an event which, with notice or lapse of time, or both, would constitute a default) under any indenture or other material agreement to which the Seller is a party or by which the Seller is bound, which in the case of either clause (i) or (ii) will have a material adverse effect on the Seller's ability to perform its obligations under this Agreement.

(d)      No authorization, consent, approval, license, exemption or other action by or notice to or registration or filing with any governmental authority or administrative or regulatory body is required for either the execution, delivery or performance of this Agreement by the Seller or the consummation of the transactions contemplated hereby, except such as shall have been made or obtained on or prior to the Closing Date.

(e)      There are no pending or, to the best of the Seller's knowledge, threatened actions, proceedings or investigations against the Seller before any court, governmental arbitrator or instrumentality which if determined adversely to the Seller may reasonably be expected, individually or in the aggregate, to (i) have a material and adverse affect on the Seller's ability to perform its obligations under this Agreement or (ii) to affect the legality, validity or enforceability of this Agreement.

(f)      The Seller is solvent and the sale of the Mortgage Loans will not cause the Seller to become insolvent.  The sale of the Mortgage Loans is not undertaken with the intent to hinder, delay or defraud any of the Seller's creditors.

(g)     The transfer of the Mortgage Loans to the Purchaser at the Closing Date will be treated by the Seller for financial accounting and reporting purposes as a sale of assets.

(h)     This Agreement does not contain any untrue statement of material fact or omit to state a material fact necessary to make the statements contained herein not misleading.  The written statements, reports and other documents prepared and furnished by the Seller pursuant to this Agreement or in connection with the transactions contemplated hereby taken in the aggregate do not contain any untrue statement of material fact or omit to state a material fact necessary to make the statements contained therein not misleading.  No certificate of an officer, statement or other information furnished in writing or report prepared, furnished and delivered by the Seller to the Purchaser, any affiliate of the Purchaser or the Trustee for use in connection with the purchase of the Mortgage Loans and the transactions contemplated hereunder and under the Pooling and Servicing Agreement will contain any untrue statement of a material fact, or omit a material fact necessary to make the information, certificate, statement or report not misleading in any material respect.

(i)     The Seller has not dealt with any broker or agent or other Person who might be entitled to a fee, commission or compensation in connection with the transaction contemplated by this Agreement other than the Purchaser and its affiliates.

(j)     The Seller is not in default with respect to any order or decree of any court, regulation or demand of any federal, state, municipal or governmental agency, which default would materially and adversely affect the condition (financial or other) or operations of the Seller or its properties or the consequences of which would have a material adverse effect on the Seller's ability to perform its obligations under this Agreement.

(k)     The transfer, assignment and conveyance of the Mortgage Notes and the Mortgages by the Seller hereunder are not subject to the bulk transfer laws or any similar statutory provisions in effect in any applicable jurisdiction.

(l)     The transactions contemplated by this Agreement are in the ordinary course of business of the Seller.

(m)     The representations and warranties set forth in this Section 5 survive the Closing Date and each applicable Subsequent Closing Date.

Section 6.     Representations and Warranties.     The Seller hereby makes the representations and warranties set forth on Schedule II to the Purchaser, as to each Mortgage Loan, as of the date therein specified or, if no such date is specified, then as of the Closing Date. The representations, warranties and covenants, set forth in this Section 6 shall survive the Closing Date.

Section 7.     Remedies Upon Breach of Representations and Warranties Made by the Seller.

(a)     If any document required to be delivered to the Person appointed by the Purchaser (the "Custodian") pursuant to a Custodial Agreement among the Purchaser, the Seller and a Custodian that shall prescribe the delivery, possession and review of the Mortgage Files for the benefit of the Purchaser with respect to any Mortgage Loans purchased by the Purchaser hereunder (the "Custodial Agreement"), the Purchaser or such other Person designated by the Purchaser pursuant to Section 4 is not delivered as and when required (and including the expiration of any grace or cure periods), not properly executed or is defective on its face, or if there is a breach of any of the representations and warranties of the Seller as set forth in Section 6 regarding the characteristics of the Mortgage Loans and/or the related Mortgaged Properties as set forth in Schedule II hereto, and in either case such defect or breach, either (i) materially and adversely affects the interests of the Purchaser in the related Mortgage Loan, or (ii) materially and adversely affects the value of the Mortgage Loan (such a document defect described in the preceding clause (i) or (ii), a "Material Document Defect" and such a breach described in the preceding clause (i) or (ii) a "Material Breach"), the party discovering such Material Document Defect or Material Breach shall promptly notify the other party in writing.  Within 90 days of the earlier of either discovery by or notice to the Seller of any such Material Document Defect or Material Breach (the "Initial Resolution Period"), the Seller shall (i) cure such Material Document Defect or Material Breach in all material respects, (ii) repurchase the affected Mortgage Loan at the applicable Purchase Price (as defined in the Pooling and Servicing Agreement) or (iii) substitute a Qualified Substitute Mortgage Loan for such affected Mortgage Loan (provided that in no event shall such substitution occur later than the second anniversary of the Closing Date) and pay to the Servicer for deposit into the Collection Account any Substitution Shortfall Amount in connection therewith; provided, however, that if (i) such Material Document Defect or Material Breach is capable of being cured but not within the Initial Resolution Period, (ii) such Material Document Defect or Material Breach is not related to any Mortgage Loan's not being a "qualified mortgage" within the meaning of the REMIC Provisions and (iii) the Seller has commenced and is diligently proceeding with the cure of such Material Document Defect or Material Breach within the Initial Resolution Period, then the Seller shall have an additional 90 days to cure such Material Document Defect or Material Breach, provided that the Seller has delivered to the Servicer, the Rating Agencies and the Trustee an officer's certificate from an officer of the Seller that describes the reasons that the cure was not effected within the Initial Resolution Period and the actions that it proposes to take to effect the cure and that states that it anticipates that the cure will be effected within the additional 90-day period.

Any of the following Defects shall be conclusively presumed to materially and adversely to affect the interests of Certificateholders in a Mortgage Loan and be a Defect deemed to materially and adversely affect the interest of the Certificateholders in and the value of a Mortgage Loan: (a) the absence from the Mortgage File of the original signed Mortgage Note, unless the Mortgage File contains a signed lost note affidavit and indemnity that appears to be regular on its face; (b) the absence from the Mortgage File of the original signed Mortgage that appears to be regular on its face, unless there is included in the Mortgage File a certified copy of the Mortgage as recorded or as sent for recordation and a certificate stating that the original signed Mortgage was sent for recordation or a copy of the Mortgage with the related recording information; (c) the absence from the Mortgage File of the item called for by paragraph (ix) of

the definition of Mortgage File; (d) the absence from the Mortgage File of any intervening assignments required to create a complete chain of assignment to the Trustee on behalf of the Trust, unless there is included in the Mortgage File a certified copy of the intervening assignment as recorded or as sent for recordation and a certificate stating that the original intervening assignments were sent for recordation; (e) the absence from the Mortgage File of any required original letter of credit (provided that at any time when the Servicer holds the original letter of credit and the Trustee holds a copy thereof, such absence of the original letter of credit from the Mortgage File will not be deemed a Material Document Defect); or (f) the absence from the Mortgage File of any Ground Lease or a copy thereof.

In addition, notwithstanding the foregoing, prior to the third anniversary of the Closing Date (in the case of assignment and other transfer documents) or the second anniversary (in the case of the other Loan Documents) of the Closing Date, any Defect with respect to a Mortgage File that arises solely as a result of the delays of a public recording or filing office or offices in returning one or more Loan Documents submitted for recording or filing shall not constitute a Material Document Defect unless the related Mortgage Loan is a Specially Serviced Loan and the Defect would, in the absence of this clause, constitute a Material Document Defect.

Any Defect or Breach which causes any Mortgage Loan not to be a "qualified mortgage" (within the meaning of Section 860G(a)(3) of the Code) shall be deemed to materially and adversely affect the interest of Certificateholders therein and the affected Mortgage Loan shall be repurchased or substituted for by the Seller within 90 days following its receipt of notice. If the affected Mortgage Loan is to be repurchased, the Collection Account shall be the account into which funds in the amount of the Purchase Price (as defined in the Pooling and Servicing Agreement) are to be deposited by wire transfer.

If the Seller incurs any expense in connection with the curing of a Breach which also constitutes a default under the related Mortgage Loan, the Seller shall have a right, and shall be subrogated to the rights of the Trustee, as successor to the mortgagee, to recover the amount of such expenses from the related Borrower; provided, however, that the Seller's rights pursuant to this paragraph shall be junior, subject and subordinate to the rights of the Trust Fund, the Servicer or the Special Servicer to recover amounts owed by the related Borrower under the terms of such Mortgage Loan, including, without limitation, the rights to recover unreimbursed Advances, accrued and unpaid Advance Interest and unpaid or unreimbursed expenses of the Trust Fund, the Servicer or the Special Servicer allocable to such Mortgage Loan; provided, that in the event and to the extent that such expenses of the Seller in connection with any Mortgage Loan exceeds five percent of the then outstanding principal balance of such Mortgage Loan, then the Seller's rights to reimbursement pursuant to this paragraph with respect to such Mortgage Loan and such excess expenses shall not be exercised until the payment in full of such Mortgage Loan (as such Mortgage Loan may be amended or modified pursuant to the terms of this Agreement).

Subject to the immediately preceding paragraph, the Seller may pursue its rights to reimbursement of such expenses directly against the Borrower, by suit or otherwise; provided that (a) the Servicer or, with respect to a Specially Serviced Loan, the Special Servicer, determines in the exercise of its sole discretion consistent with the Servicing Standard that such actions by the Seller will not impair the Servicer's and/or the Special Servicer's collection or

recovery of principal, interest and other sums due with respect to the related Mortgage Loan which would otherwise be payable to the Servicer, the Special Servicer, the Trustee and the Certificateholders pursuant to the terms of this Agreement, (b) such actions will not include an involuntary bankruptcy, receivership or insolvency proceeding against the Borrower, (c) such actions will not include the foreclosure or enforcement of any lien or security interest under the related Mortgage or other Loan Documents and (d) such actions will not result in the imposition of an additional lien against the Mortgaged Property.

The obligations of the Seller set forth in this Section 7 to repurchase a defective Mortgage Loan constitute the sole remedies of the Purchaser or its assignees with respect to a Material Document Defect or Material Breach in respect of an outstanding Mortgage Loan; provided, however, that the Seller shall be responsible for the payment of any reasonable costs incurred by the Purchaser in connection with the repurchase of any Mortgage Loan as a result of a Material Breach; provided, further, that this limitation shall not in any way limit the Purchaser's rights or remedies upon breach of any other representation or warranty or covenant by the Seller set forth in this Agreement (other than those set forth in Schedule II).

Notwithstanding the foregoing, in the event that there is a breach of the representation and warranty set forth in paragraph 39 of Schedule II attached hereto because the underlying loan documents do not provide for the payment of reasonable costs and expenses associated with the assumption of a Mortgage Loan by the Mortgagor or a breach of the representation and warranty set forth in paragraph 24 of Schedule II attached hereto because the underlying loan documents do not provide for the payment by the Mortgagor of the costs of a tax opinion associated with the full or partial release or substitution of collateral for a Mortgage Loan, the Seller hereby covenants and agrees to pay such reasonable costs and expenses, to the extent an amount is due and not paid by the related Mortgagor. The parties hereto acknowledge that the payment of such reasonable costs and expenses by the Seller shall be the Purchaser's sole remedy with respect to the breaches discussed in the previous sentence. The Seller shall have no obligation to pay for any of the foregoing costs if the applicable Mortgagor has an obligation to pay for such costs.

(b)    If the Seller repurchases any Mortgage Loan pursuant to this Section 7, the Purchaser, following receipt by the Purchaser of the Purchase Price therefor, promptly shall deliver or cause to be delivered to the Seller or its designee all Mortgage Loan documents with respect to such Mortgage Loan (including, without limitation, all documents delivered by Seller pursuant to Section 4 of this Agreement) in each case without recourse, representation or warranty, including any property acquired in respect of such Mortgage Loan or proceeds of any insurance policies with respect thereto.

Section 8.    Closing; Payment for the Mortgage Loans.  The closing of the purchase and sale of the Mortgage Loans shall be held at the Washington, D.C. office of Kirkpatrick & Lockhart Nicholson Graham LLP at 9:00 a.m. New York Time on the Closing Date.

The closing shall be subject to each of the following conditions:

(i)    All of the representations and warranties of the Seller set forth in Section 5 of this Agreement shall be true and correct as of the Closing Date and no event shall have

occurred which, with notice or the passage of time, would constitute a default under this Agreement or an Event of Default under the Pooling and Servicing Agreement;

(ii)      The Purchaser shall have received, or the Purchaser's attorneys shall have received, in escrow (to be released from escrow at the time of closing), all Closing Documents as specified in Section 9 of this Agreement, in such forms as are agreed upon and acceptable to the Purchaser, duly executed by all signatories other than the Purchaser as required pursuant to the respective terms thereof;

(iii)     The Seller shall have delivered and released to the Purchaser or to its assignee, transferee or designee, all documents (including without limitation, the Mortgage Loans) required to be so delivered by the Seller pursuant to Section 4(b) hereof; and

(iv)     All other terms and conditions of this Agreement shall have been complied with.

Subject to the foregoing conditions, the Purchaser shall deliver or cause to be delivered to the Seller on the Closing Date, against delivery and release by the Seller to the Trustee of all documents required pursuant to this Agreement and the Pooling and Servicing Agreement, the consideration for the Mortgage Loans as specified in Section 3 of this Agreement, by delivery to the Seller of the Purchase Amount in immediately available funds.

Section 9.      Closing Documents.     The Closing Documents shall consist of the following:

(i)      The Pooling and Servicing Agreement, dated as of the Cut-off Date, substantially in the form of Exhibit 1 hereto and with such further changes therein as the Seller and the Purchaser shall mutually agree to, together with all documents required to be delivered thereunder; and

(ii)      With respect to the Mortgage Loans:

(1)      An Officer's Certificate of the Seller, dated the Closing Date, upon which the Purchaser, Greenwich Capital Markets, Inc. ("GCM"), Deutsche Bank Securities, Inc. ("DB"), and CBA Securities, LLC (collectively with GCM and DB, the "Initial Purchasers") may rely, in the form of Exhibit 2 hereto, and attached thereto a certified copy of the resolutions of the board of directors of the Seller, together with copies of the Seller's Certificate of Formation and Limited Liability Company Agreement, as amended, and a certificate of good standing of the Seller from the Secretary of State of the State of Delaware;

(2)      An Officer's Certificate of the Seller, dated the Closing Date, upon which the Purchaser and the Initial Purchasers may rely, in the form of Exhibit 3 hereto, with respect to certain facts regarding the sale of the Mortgage Loans by the Seller to the Purchaser;

(3)     An Opinion of Counsel of the Seller (who may be in-house counsel of the Seller), dated the Closing Date and addressed to the Purchaser and the Initial Purchasers, substantially in the form attached hereto as Exhibit 4;

(4)     A letter from Deloitte & Touche LLP, dated the date hereof, to the effect that they have performed certain specified procedures as a result of which they determined that certain information of an accounting, financial or statistical nature set forth in the Purchaser's Preliminary Private Placement Memorandum dated as of April 21, 2006 and in the Private Placement Memorandum dated April 24, 2006 (collectively the "Private Placement Memorandum") has been properly calculated;

(5)     Such opinions of counsel as the Rating Agencies or the Trustee may reasonably request in connection with the sale of the Mortgage Loans by the Seller to the Purchaser or the Seller's execution and delivery of, or performance under, this Agreement or the Pooling and Servicing Agreement; and

(6)     Such further information, certificates, opinions and documents as the Purchaser or the Initial Purchasers may reasonably request.

(iii)     Such additional documentation as is required to be delivered under the Purchase Agreement dated April 24, 2006 among the Seller, the Purchaser and the Initial Purchaser.

Section 10.     Costs.  The Seller shall pay (or shall reimburse the Purchaser or any other Person to the extent that the Purchaser or such other Person shall pay) all costs and expenses incurred in connection with the transfer and delivery of the Mortgage Loans, including without limitation recording fees, fees for title policy endorsements and continuations, fees for recording Assignment of Mortgages, the fees and expenses of the Seller's accountants for delivery of the letter specified in Section 9(ii)(4) above and the Seller's attorneys, the fees, expenses and disbursements of the Trustee under the Pooling and Servicing Agreement (other than the annual fee paid out of the Trust Fund), any related insurance agreement or related documents. The Seller shall pay the costs and expenses of printing (or otherwise reproducing) and delivering the Private Placement Memorandum relating to the Certificates, the Pooling and Servicing Agreement and related documents including the costs of printing any of the Certificates, the initial fees, the fees and expenses of the Purchaser's counsel in connection with the preparation of all documents relating to the securitization of the Mortgage Loans and the fees charged by any rating agency to rate the Certificates.

Section 11.     [Reserved]

Section 12.     Mandatory Delivery; Grant of Security Interest.  The sale and delivery on the Closing Date of the Mortgage Loans described on the Closing Schedule in accordance with the terms and conditions of this Agreement is mandatory. It is specifically understood and agreed that each Mortgage Loan is unique and identifiable on the date hereof and that an award of money damages would be insufficient to compensate the Purchaser for the losses and damages incurred by the Purchaser in the event of the Seller's failure to deliver the Mortgage Loans on or

before the Closing Date. The Seller hereby grants to the Purchaser a lien on and a continuing security interest in the Seller's interest in each Mortgage Loan (including any related Additional Loan Amounts) and each document and instrument evidencing each such Mortgage Loan to secure the performance by the Seller of its obligation hereunder, and the Seller agrees to prepare and deliver to the Purchaser or Purchaser's assignee or transferee, not less than fifteen (15) days prior to any filing date and, the Purchaser or its assignee or transferee shall forward for filing, or shall cause to be forwarded for filing, at the expense of the Seller, all filings necessary to maintain the effectiveness of any original filings necessary under the Uniform Commercial Code as in effect in any jurisdiction to perfect the security interest in or lien on the Mortgage Loans. The Seller agrees that it holds such Mortgage Loans in custody for the Purchaser, subject to the Purchaser's (i) right, prior to the Closing Date, to reject any Mortgage Loan to the extent permitted by this Agreement and to require another Mortgage Loan to be substituted therefor pursuant to Section 4 hereof, and (ii) obligation to deliver or cause to be delivered the consideration for the Mortgage Loans pursuant to Section 8 hereof. Any Mortgage Loans rejected by the Purchaser shall concurrently therewith be released from the security interest created hereby. All rights and remedies of the Purchaser under this Agreement are distinct from, and cumulative with, any other rights or remedies under this Agreement or, subject to Section 7(b) hereof, afforded by law or equity and all such rights and remedies may be exercised concurrently, independently or successively.

Notwithstanding the foregoing, if on the Closing Date, each of the conditions set forth in Section 8 hereof shall have been satisfied and the Purchaser shall not have paid or caused to be paid the Purchase Amount, or any such condition shall not have been waived or satisfied and the Purchaser determines not to pay or cause to be paid the Purchase Amount, the Purchaser shall immediately effect the redelivery of the Mortgage Loans, if delivery to the Purchaser has occurred, and the security interest created by this Section 12 shall be deemed to have been released.

Section 13.    Notices.  All demands, notices and communications hereunder shall be in writing and shall be deemed to have been duly given if personally delivered to or mailed by registered mail, postage prepaid, or transmitted by telex, telegraph or facsimile and confirmed by a similar mailed writing, if to the Purchaser, addressed to the Purchaser, at 695 East Main Street, Stamford, Connecticut 06901, Attention: Secretary, or to such other address as the Purchaser may designate in writing to the Seller; and if to the Seller, addressed to the Seller, at 695 East Main Street, Stamford, Connecticut 06901, Attention: Secretary, or to such other address as the Seller may designate in writing to the Purchaser.

Section 14.    Severability of Provisions.  Any part, provision, representation or warranty of this Agreement which is prohibited or which is held to be void or unenforceable shall be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof. Any part, provision, representation or warranty of this Agreement that is prohibited or unenforceable or is held to be void or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction as to any Mortgage Loan shall not invalidate or render unenforceable such provision in any other jurisdiction. To the extent permitted by applicable law, the parties hereto waive any provision of law that prohibits or renders void or unenforceable any provision hereof.

15

Section 15.    Agreement of Parties.  The Seller and the Purchaser each agree to execute and deliver such instruments and take such actions as the other may, from time to time, reasonably request in order to effectuate the purpose and to carry out the terms of this Agreement and the Pooling and Servicing Agreement.

Section 16.    Survival.   The Seller agrees that the representations, warranties and agreements made by it herein and in any certificate or other instrument delivered pursuant hereto shall be deemed to be relied upon by the Purchaser, notwithstanding any investigation heretofore or hereafter made by the Purchaser or on the Purchaser's behalf, and that the representations, warranties and agreements made by the Seller herein or in any such certificate or other instrument shall survive the delivery of and payment for the Mortgage Loans and each delivery of payment for Additional Loan Amounts and shall continue in full force and effect, notwithstanding any restrictive or qualified endorsement on the Mortgage Notes and notwithstanding subsequent termination of this Agreement, the Pooling and Servicing Agreement or the Trust Fund.

Section 17.    Indemnification.

(a)      The Seller agrees to indemnify and hold harmless the Purchaser and each person, if any, who controls the Purchaser within the meaning of Section 15 of the Securities Act (collectively, the "Indemnified Party") against any and all losses, claims, expenses, damages or liabilities to which the Indemnified Party may become subject, under the Securities Act or otherwise, insofar as such losses, claims, expenses, damages or liabilities (or actions in respect thereof) arise out of or are based upon (i) any untrue statement or alleged untrue statement of any material fact contained in the Private Placement Memorandum or the omission or the alleged omission to state therein a material fact necessary in order to make the statements therein not misleading, in each case to the extent, but only to the extent, that such untrue statement or alleged untrue statement or omission or alleged omission was made in reliance upon and in conformity with information furnished in writing to the Purchaser by the Seller specifically for use therein, which shall include the information set forth in the Private Placement Memorandum under "Risk Factors — Risks Associated with the Mortgage Loans," "Description of the Mortgage Pool" and "CBA Commercial, LLC"; (ii) any representation, warranty or covenant made by the Seller in this Agreement or in the Pooling and Servicing Agreement being, or alleged to be, untrue or incorrect in any material respect; or (iii) the information regarding the mortgage loan data as set forth on the Closing Schedule attached hereto as Schedule I and made a part hereof for all purposes being, or alleged to be, untrue or incorrect in any material respect; provided, however, that to the extent that any such losses, claims, expenses, damages or liabilities to which the Indemnified Party may become subject arise out of or are based upon both (A) statements, omissions, representations, warranties, covenants or information of the Seller described in clause (i), (ii) or (iii) above and (B) any other factual basis, the Seller shall indemnify and hold harmless the Indemnified Party only to the extent that the losses, claims, expenses, damages or liabilities of the person or persons asserting the claim are determined to arise from or be based upon matters set forth in clauses (i), (ii) and/or (iii) above.  This indemnity agreement will be in addition to any liability that the Seller may otherwise have.

16

(b)     Promptly after receipt by the Indemnified Party of notice of the commencement of any such action, the Indemnified Party will, if a claim in respect thereof is to be made against the Seller under this Section 17, promptly notify the Seller in writing of the commencement thereof and the Seller, upon the request of the Indemnified Parry, shall retain counsel satisfactory to the Indemnified Party to represent the Indemnified Party and shall pay the reasonable fees and disbursements of such counsel related to such proceeding (in which case the Seller shall not thereafter be responsible for the fees and expenses of any separate counsel retained by the Indemnified Party except as set forth below). In any such proceeding, the Indemnified Party shall have the right to employ separate counsel (including local counsel), and the Seller shall bear the reasonable fees, costs and expenses of such separate counsel if (i) the use of counsel chosen by the Seller to represent the Indemnified Party would present such counsel with a conflict of interest, (ii) the actual or potential defendants in, or targets of, any such action include both the Indemnified Party and the Seller and the Indemnified Party shall have reasonably concluded that there may be legal defenses available to it that are different from or additional to those available to the Seller, (iii) the Seller shall not have employed counsel satisfactory to the Indemnified Party to represent the Indemnified Party within a reasonable time after notice of the institution of such action or (iv) the Seller shall authorize the Indemnified Party to employ separate counsel at the expense of the Seller. The Seller shall reimburse the Indemnified Party for such fees, costs and expenses as they are incurred. The Seller will not, without the prior written consent of the Indemnified Party, settle or compromise or consent to the entry of any judgment with respect to any pending or threatened claim, action, suit or proceeding in respect of which indemnification or contribution may be sought hereunder (whether or not the Indemnified Party is an actual or potential party to such claim or action) unless such settlement, compromise or consent includes an unconditional release of each Indemnified Party from all liability arising out of such claim, action, suit or proceeding. In addition, for so long as the Seller is covering all costs and expenses of the Indemnified Party as provided herein, no Indemnified Party will settle or compromise or consent to the entry of any judgment with respect to any pending or threatened claim, action, suit or proceeding in respect of which indemnification or contribution may be sought hereunder without the consent of the Seller, which consent shall not be unreasonably withheld. The Seller shall respond to any written request to provide such consent within twenty (20) days after receipt thereof; if the Seller fails to respond within such time period, the Seller shall be deemed to have responded in the negative to such request.

(c)     Nothing in this Agreement shall be construed to allow an Indemnified Party to recover punitive damages or consequential damages from the Seller; provided, however, that this Section shall not limit indemnification of any Indemnified Party for damages (however construed) actually recovered from an Indemnified Party by third parties.

Section 18.     Governing Law.   THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, WITHOUT REFERENCE TO ITS CONFLICT OF LAW PROVISIONS (OTHER THAN SECTION 5-1401 OF THE GENERAL OBLIGATIONS LAW), AND THE

OBLIGATIONS, RIGHTS AND REMEDIES OF THE PARTIES HEREUNDER SHALL BE DETERMINED IN ACCORDANCE WITH SUCH LAWS.

Section 19.   <u>Miscellaneous</u>.   This Agreement may be executed in two or more counterparts, each of which when so executed and delivered shall be an original, but all of which together shall constitute one and the same instrument.  This Agreement shall inure to the benefit of and be binding upon the parties hereto and their respective successors and assigns.  This Agreement supersedes all prior agreements and understandings relating to the subject matter hereof.  Neither this Agreement nor any term hereof may be changed, waived, discharged or terminated orally, but only by an instrument in writing signed by the party against whom enforcement of the change, waiver, discharge or termination is sought.  The headings in this Agreement are for purposes of reference only and shall not limit or otherwise affect the meaning hereof.

It is the express intent of the parties hereto that the conveyance of the Mortgage Loans by the Seller to the Purchaser as provided in Section 4 hereof be, and be construed as, a sale of the Mortgage Loans by the Seller to the Purchaser and not as a pledge of the Mortgage Loans by the Seller to the Purchaser to secure a debt or other obligation of the Seller. However, in the event that, notwithstanding the aforementioned intent of the parties, the Mortgage Loans are held to be property of the Seller, then, (a) it is the express intent of the parties that such conveyance be deemed a pledge of the Mortgage Loans by the Seller to the Purchaser to secure a debt or other obligation of the Seller and (b) (1) this Agreement shall also be deemed to be a security agreement within the meaning of Articles 8 and 9 of the New York Uniform Commercial Code; (2) the conveyance provided for in Section 4 hereof shall be deemed to be a grant by the Seller to the Purchaser of a security interest in all of the Seller's right, title and interest in and to the Mortgage Loans and all amounts payable to the holders of the Mortgage Loans in accordance with the terms thereof and all proceeds of the conversion, voluntary or involuntary, of the foregoing into cash, instruments, securities or other property, including without limitation all amounts, other than investment earnings, from time to time held or invested in the Collection Account whether in the form of cash, instruments, securities or other property; (3) the possession by the Purchaser or its agent of Mortgage Notes, the related Mortgages and such other items of property that constitute instruments, money, negotiable documents or chattel paper shall be deemed to be "possession by the secured party" for purposes of perfecting the security interest pursuant to Section 9-313(a) of the New York Uniform Commercial Code; and (4) notifications to persons holding such property, and acknowledgments, receipts or confirmations from persons holding such property, shall be deemed notifications to, or acknowledgments, receipts or confirmations from, financial intermediaries, bailees or agents (as applicable) of the Purchaser for the purpose of perfecting such security interest under applicable law. Any assignment of the interest of the Purchaser pursuant to Section 4(e) hereof shall also be deemed to be an assignment of any security interest created hereby. The Seller and the Purchaser shall, to the extent consistent with this Agreement, take such actions as may be necessary to ensure that, if this Agreement were deemed to create a security interest in the Mortgage Loans, such security interest would be deemed to be a perfected security interest of first priority under applicable law and will be maintained as such throughout the term of this Agreement and the Pooling and Servicing Agreement.

*[Signature Page Follows]*

18

IN WITNESS WHEREOF, the Purchaser and the Seller have caused their names to be signed by their respective officers thereunto duly authorized as of the date first above written.

CBA COMMERCIAL ASSETS, LLC

By: CBA COMMERCIAL MANAGEMENT, INC.,
    its Manager

By: _____
    Name:  Clayton Andrews
    Title:   President

CBA COMMERCIAL, LLC

By: _____
    Name:  Clayton E. Andrews
    Title:   President

CBAC 2006-1 Mortgage Loan Purchase Agreement

SCHEDULE I

CLOSING SCHEDULE

SCHEDULE II

REPRESENTATIONS AND WARRANTIES REGARDING
INDIVIDUAL MORTGAGE LOANS

The Seller hereby makes for the benefit of the Purchaser and its assigns with respect to each Mortgage Loan as of the date hereof and as of the related Closing Date (or as of such other date specifically set forth in the particular representation and warranty) each of the following representations and warranties, except as otherwise set forth on Schedule III attached to the Agreement:

       1.      <u>Mortgage Loan Schedule</u>.   The information set forth on Schedule I to the Agreement (the "<u>Mortgage Loan Schedule</u>") is complete, true and correct in all material respects as of the related Cut-Off Date.

       2.      <u>Whole Loan; Ownership of Mortgage Loans</u>.   Each Mortgage Loan is a whole loan and not a participation interest in a mortgage loan.   Immediately prior to the transfer to the Purchaser of the Mortgage Loans, the Seller had good title to, and was the sole owner of, each Mortgage Loan.   The Seller has full right, power and authority to transfer and assign each of the Mortgage Loans to or at the direction of the Purchaser and (assuming that the Purchaser has the capacity to acquire such Mortgage Loan) has validly and effectively conveyed (or caused to be conveyed) to the Purchaser or its designee all of the Seller's legal and beneficial interest in and to the Mortgage Loans free and clear of any and all pledges, liens, charges, security interests and/or other encumbrances.   The Seller was qualified and appropriately licensed (or was exempt from such qualification or license) to transact business in the jurisdiction in which the related Mortgaged Property is located at the time such entity had possession of the Mortgage Note except where the failure to be qualified or licensed would not have a material adverse effect on the Mortgage Loans. The sale of the Mortgage Loans to the Purchaser or its designee does not require the Seller to obtain any governmental or regulatory approval or consent that has not been obtained.   None of the Mortgage Loan documents restricts the Seller's right to transfer the Mortgage Loan to the Purchaser.

       3.      <u>Payment Record</u>.   Except as noted in Schedule III, no scheduled payment of principal or interest under any Mortgage Note was 30 or more days delinquent as of the Cut-Off Date and no Mortgage Loan identified in Schedule III as an exception to this representation is 60 or more days delinquent as of the Cut-Off Date.

       4.      <u>Lien; Valid Assignment</u>.   The Mortgage related to and delivered in connection with each Mortgage Loan constitutes a valid and enforceable first priority lien upon the related Mortgaged Property, prior to all other liens and encumbrances, except for (a) the lien for current real estate taxes and assessments not yet past due and payable, (b) covenants, conditions and restrictions, rights of way, easements and other matters that are of public record and/or are referred to in the related lender's title insurance policy, (c) exceptions and exclusions specifically referred to in such lender's title insurance policy, and (d) other matters to which like properties are commonly subject, none of which matters referred to in clauses (b), (c) or (d), individually or in the aggregate, materially interferes with the security intended to be provided by such

1

Mortgage, the value or current use or operation of the Mortgaged Property or the current ability of the Mortgaged Property to generate operating income sufficient to service the Mortgage Loan debt (the foregoing items (a) through (d) being herein referred to as the "Permitted Encumbrances"). The related Assignment of Mortgage executed and delivered to the Purchaser in blank, is otherwise in recordable form and constitutes a legal, valid and binding assignment, and, assuming that the assignee has the capacity to acquire such Mortgage, sufficient to convey to the assignee named therein all of the assignor's right, title and interest in, to and under such Mortgage. Notwithstanding the fact that the Seller shall not be required to file Uniform Commercial Code financing statements or continuation statements, such Mortgage, together with any separate security agreements, chattel mortgages or equivalent instruments, establishes and creates a valid and enforceable security interest in favor of the holder thereof in all of the related Mortgagor's personal property used in the operation of the related Mortgaged Property.

5.      Assignment of Leases and Rents.  Any assignment of leases, rents and profits or similar document or instrument executed by the related Mortgagor in connection with the origination of the related Mortgage Loan, assigning to the mortgagee all of the income, rents and profits derived from the ownership, operation, leasing or other disposition of all or a portion of such Mortgaged Property, in the form which such assignment or similar agreement was duly executed, acknowledged and delivered, as such document may be amended, modified, renewed or extended from time to time (the "Assignment of Leases and Rents") related to and delivered in connection with each Mortgage Loan establishes and creates a valid and, subject to the exceptions set forth in paragraph 4 above, enforceable first priority collateral assignment in the related Mortgagor's interest in all leases, sub-leases, licenses or other agreements pursuant to which any person is entitled to occupy, use or possess all or any portion of the real property subject to the related Mortgage, subject to legal limitations of general applicability to mortgage loans similar to the Mortgage Loans, and the Mortgagor and each assignor of such Assignment of Leases and Rents to the Seller have the full right to assign the same. The related assignment of any Assignment of Leases and Rents not included in a mortgage, deed of trust, deed to secure debt or similar document that secures, in whole or in part, the related Mortgage Note and creates a lien on the related Mortgaged Property (a "Mortgage") has been executed and delivered to the Purchaser in blank, is otherwise in recordable form and constitutes a legal, valid and binding assignment, sufficient to convey to the assignee named therein (assuming that the assignee has the capacity to acquire such Assignment of Leases and Rents) all of the assignor's right, title and interest in, to and under such Assignment of Leases and Rents.

6.      Mortgage Status; Waivers and Modifications.  No Mortgage has been satisfied, cancelled, rescinded or (except for Permitted Encumbrances) subordinated in whole or in part, and the related Mortgaged Property has not been released from the lien of such Mortgage, in whole or in part, nor has any instrument been executed that would effect any such satisfaction, cancellation, subordination (except for Permitted Encumbrances), rescission or release, in any manner that, in each case, materially and adversely affects the value of the related Mortgaged Property except for any partial reconveyances of real property that are included in the related Mortgage File. None of the terms of any Mortgage Note, Mortgage or Assignment of Leases and Rents has been impaired, waived, altered or modified, in each case in any material respect. Any non-material waivers, alterations or modifications with respect to any Mortgage Loan are evidenced by written instruments, all of which are included in the related Mortgage File.

7.     <u>Condition of Property; Condemnation</u>. The Mortgaged Property for each Mortgage Loan is in good repair and condition and free of any damage that would materially and adversely affect the use, value or operation of the related Mortgaged Property as security for the Mortgage Loan or structural deficiencies or deferred maintenance that would influence the Seller's decision to originate any such Mortgage Loan or the Purchaser's decision to purchase such Mortgage Loan.

As of the date of its origination and to the Seller's knowledge as of the Cut-off Date, there was no proceeding pending or threatened for the total or partial condemnation of any related Mortgaged Property that materially affects the value thereof and, as of the related Cut-off Date, there was no pending proceeding for the total or partial condemnation of the related Mortgaged Property that materially affects the use, operation, or value thereof. To the best of Seller's knowledge (based on surveys and/or title insurance obtained in connection with the origination of the Mortgage Loans), as of the date of the origination of each Mortgage Loan, all of the material improvements on the related Mortgaged Property that were considered in determining the value of the Mortgaged Property lay wholly within the boundaries of such property, except for encroachments that are insured against by the lender's title insurance policy referred to herein or that do not materially and adversely affect the value or marketability of such Mortgaged Property, and no improvements on adjoining properties materially encroached upon such Mortgaged Property so as to materially and adversely affect the value or marketability of such Mortgaged Property, except those encroachments that are insured against by the Title Policy referred to herein.

8.     <u>Title Insurance</u>.  Each Mortgaged Property is covered by an American Land Title Association (or an equivalent form of) lender's title insurance policy or pro forma policy (the "<u>Title Policy</u>") in the original principal amount of the related Mortgage Loan after all advances of principal.  Each Title Policy insures that the related Mortgage is a valid first priority lien on such Mortgaged Property, subject only to the Permitted Encumbrances stated therein (or a marked up title insurance commitment or pro forma policy marked as binding and counter-signed by the title insurer or its authorized agent on which the required premium has been paid exists which evidences that such Title Policy will be issued).  Each Title Policy (or, if it has yet to be issued, the coverage to be provided thereby) is in full force and effect, all premiums thereon have been paid, no material claims have been made thereunder and no claims have been paid thereunder. Neither the Seller nor any prior holder under the related Mortgage has done, by act or omission, anything that would materially impair the coverage under such Title Policy. Immediately following the transfer and assignment of the related Mortgage Loan to the Purchaser, such Title Policy (or, if it has yet to be issued, the coverage to be provided thereby) will inure to the benefit of the Purchaser without the consent of or notice to the insurer.  The insurer issuing such Title Policy is qualified to do business in the jurisdiction in which the related Mortgaged Property is located. Such Title Policy contains no exclusions for or affirmatively insures (other than in jurisdictions where affirmative insurance is unavailable), (i) access to public roads and (ii) against material losses due to encroachments of any part of the building thereon over easements.

9.     <u>No Holdbacks</u>.  The proceeds of each Mortgage Loan have been fully disbursed and there is no obligation for future advances with respect thereto.  With respect to each Mortgage Loan, any and all requirements as to completion of any on-site or off-site improvement

3

and as to disbursements of any funds escrowed for such purpose that were to have been complied with on or before the related Closing Date have been complied with, or any such funds so escrowed have not been released.

10.   <u>Mortgage Provisions</u>.  The Mortgage Note or Mortgage for each Mortgage Loan, together with applicable state law, contains customary and enforceable provisions (subject to the exceptions set forth in paragraph 14), including foreclosure, such as to render the rights and remedies of the holder thereof adequate for the practical realization against the related Mortgaged Property of the principal benefits of the security intended to be provided thereby. The related Mortgage Loan documents provide for the appointment of a receiver of rents following an event of default under such loan documents, to the extent available under applicable law.

11.   <u>Trustee under Deed of Trust</u>.  If any Mortgage is a deed of trust, (a) a trustee, duly qualified under applicable law to serve as such, is properly designated and serving under such Mortgage, and (b) no fees or expenses are payable to such trustee by the Seller, the Purchaser or any transferee thereof except in connection with a trustee's sale after default by the related Mortgagor or in connection with any full or partial release of the related Mortgaged Property or related security for the related Mortgage Loan.

12.   <u>Environmental Conditions</u>. Each Mortgage Loan will be covered by an environmental insurance policy (the "<u>Environmental Insurance Policy</u>") issued by an insurance company acceptable to the Purchaser in its reasonable discretion  or have an Environmental Report (as defined below). Such insurance policy shall cover losses resulting from an environmental condition on a Mortgaged Property after the default of the related Mortgagor and the [[insured amount under each such insurance policy, in the aggregate, will be equal to $20 million or 20% of the aggregate outstanding loan balance]]. In the event that the Seller has obtained an environmental site assessment meeting ASTM standards and assessing all hazards generally assessed for similar properties (as of the date of such assessment), including type, use and tenants for such similar properties ("<u>Environmental Report</u>") with respect to any Mortgaged Property in connection with the origination of any Mortgage Loan, the Seller shall provide such Environmental Report to the Purchaser.

(a)   With respect to each Mortgaged Property for which an Environmental Report was prepared, other than as disclosed in such Environmental Report, to the best of Seller's knowledge, (X) no Hazardous Material is present on such Mortgaged Property, such that (1) the value, use or operations of such Mortgaged Property is materially and adversely affected, or (2) under applicable federal, state or local law and regulations, (i) such Hazardous Material could be required to be eliminated, remediated or otherwise responded to at a cost or in a manner materially and adversely affecting the value, use or operations of the Mortgaged Property before such Mortgaged Property could be altered, renovated, demolished or transferred or (ii) the presence of such Hazardous Material could (upon action by the appropriate governmental authorities) subject the owner of such Mortgaged Property, or the holders of a security interest therein, to liability for the cost of eliminating, remediating or otherwise responding to such Hazardous Material or the hazard created thereby at a cost or in a manner materially and adversely affecting the value, use or operations of the Mortgaged Property, and (Y) such Mortgaged Property is in material compliance with all applicable federal, state and local laws

4

and regulations pertaining to Hazardous Materials or environmental hazards, any noncompliance with such laws or regulations does not have a material adverse effect on the value, use or operations of such Mortgaged Property and neither Seller nor, to the best of Seller's knowledge, the related Mortgagor or any current tenant thereon, has received any notice of any violation or potential violation of any such law or regulation. With respect to any condition disclosed in the Environmental Report, which condition constituted a violation of applicable laws or regulations or would materially and adversely affect the value, use or operations of the related Mortgaged Property if not remedied, such condition has either been satisfactorily remedied, consistent with prudent multi-family, commercial and mixed-use mortgage lending practices (as applicable), or the applicable loan documents contain provisions which address such condition to the satisfaction of the Seller, consistent with prudent multi-family, commercial and mixed-use mortgage lending practices (as applicable), and adequate funding or resources, consistent with prudent multi-family, commercial and mixed-use mortgage lending practices (as applicable), were available to remedy or otherwise respond to such condition.

(b)     Each Mortgage requires the related Mortgagor to comply with all applicable federal, state and local environmental laws and regulations.

"Hazardous Materials" means gasoline, petroleum products, explosives, radioactive materials, polychlorinated biphenyls or related or similar materials, and any other substance, material or waste as may be defined as a hazardous or toxic substance, material or waste by an federal, state or local environmental law, ordinance, rule, regulation or order, including without limitation, the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended (42 U.S.C. §§ 9601 et seq.), the Hazardous Materials Transportation Act, as amended (49 U.S.C. §§ 1801 et seq.), the Resource Conservation and Recovery Act, as amended (42 U.S.C. §§ 6901 et seq.), the Federal Water Pollution Control Act, as amended (33 U.S.C. §§ 1251 et seq.), the Clean Air Act, as amended (42 U.S.C. §§ 7401 et seq.), and any regulations promulgated pursuant thereto.

13.     Loan Document Status. Each Mortgage Note, Mortgage and other agreement that evidences or secures such Mortgage Loan and that was executed by or on behalf of the related Mortgagor is the legal, valid and binding obligation of the maker thereof (subject to any non-recourse provisions contained in any of the foregoing agreements and any applicable state anti-deficiency or market value limit deficiency legislation), enforceable in accordance with its terms, except with respect to provisions relating to default interest, yield maintenance premiums and prepayment premiums and as such enforcement may be limited by bankruptcy, insolvency, reorganization or other similar laws affecting the enforcement of creditors' rights generally, and by general principles of equity (regardless of whether such enforcement is considered in a proceeding in equity or at law) and there is no valid defense, counterclaim or right of offset or rescission available to the related Mortgagor with respect to such Mortgage Note, Mortgage or other agreements.

14.     Insurance. Each Mortgaged Property is, and is, required pursuant to the related Mortgage to be, and at origination the Seller received evidence that such Mortgaged Property was, insured by (a) a fire and extended perils insurance policy providing coverage against loss or damage sustained by reason of fire, lightning, hail, windstorm, explosion, riot, riot attending a strike, civil commotion, aircraft, vehicles and smoke, and, to the extent required as of the date of

origination by the originator of such Mortgage Loan consistent with its normal multi-family, commercial and mixed-use mortgage lending practices (as applicable), against other risks insured against by persons operating like properties in the locality of the Mortgaged Property, in an amount not less than the lesser of the principal balance of the related Mortgage Loan and the replacement cost of the improvements on the Mortgaged Property, and with no provisions for a deduction for depreciation in respect of awards for the reconstruction of the improvements, and not less than the amount necessary to avoid the operation of any co-insurance provisions with respect to the Mortgaged Property; and (b) a flood insurance policy (if any portion of buildings or other structures (excluding parking) on the Mortgaged Property are located in an area identified by the Federal Emergency Management Agency ("FEMA") as a special flood hazard area (which "special flood hazard area" does not include areas designated by FEMA as Zones B, C or X)). With respect to each Mortgaged Property, such Mortgaged Property is required pursuant to the related Mortgage to be (or the holder of the Mortgage can require that the Mortgaged Property be), and at origination the Seller received evidence that such Mortgaged Property was, insured by a multi-family, commercial or mixed-use general liability insurance policy (as applicable) in amounts as are generally required by multi-family, commercial and mixed-use mortgage lenders (as applicable) for similar properties. Under such insurance policies either (A) the Seller is named as mortgagee under a standard mortgagee clause or (B) the Seller and/or related servicer is named as an additional insured, and is entitled to receive prior notice as the holder of the Mortgage of termination or cancellation. No such notice has been received, including any notice of nonpayment of premiums, which has not been cured. Each Mortgage obligates the related Mortgagor to maintain or cause to be maintained all such insurance and, upon such Mortgagor's failure to do so, authorizes the holder of the Mortgage to maintain or to cause to be maintained such insurance at the Mortgagor's cost and expense and to seek reimbursement therefor from such Mortgagor. Each Mortgage Loan provides that casualty insurance proceeds will be applied either to the restoration or repair of the related Mortgaged Property or to the reduction of the principal amount of the Mortgage Loan. Each Mortgage provides that any related insurance proceeds, other than for a total loss or taking, will be applied either to the repair or restoration of all or part of the related Mortgaged Property, with the mortgagee or a trustee appointed by the mortgagee having the right to hold and disburse such proceeds as the repair or restoration progresses (except in such cases where a provision entitling another party to hold and disburse such proceeds would not be viewed as commercially unreasonable by a prudent multi-family, commercial and mixed-use mortgage lender (as applicable)), or to the payment of the outstanding principal balance of the Mortgage Loan together with any accrued interest thereon, and any insurance proceeds in respect of a total or substantially total loss or taking may be applied either to payment of outstanding principal and interest on the Mortgage Loan (except as otherwise provided by law) or to rebuilding of the Mortgaged Property.

15.     Taxes and Assessments and Ground Lease Rents. As of the related Closing Date, there are no delinquent taxes, assessments or other outstanding charges affecting any Mortgaged Property that are or may become a lien of priority equal to or higher than the lien of the related Mortgage. For purposes of this representation and warranty, real property taxes and assessments shall be considered delinquent commencing from the date on which interest or penalties would be first payable thereon. As of the related Closing Date, there are no delinquent rents on any ground leases for any Mortgaged Property.

16.     <u>Mortgagor Bankruptcy</u>.  No Mortgagor is a debtor in any state or federal bankruptcy or insolvency proceeding and no Mortgaged Property or any portion thereof is subject to a plan in any such proceeding.

17.     <u>Leasehold Estate</u>.  Each Mortgaged Property consists of the related Mortgagor's fee simple estate in real estate (the "<u>Fee Interest</u>") or the related Mortgage Loan is secured in whole or in part by the interest of the related Mortgagor as a lessee under a ground lease of the Mortgaged Property (a "<u>Ground Lease</u>"), and if secured in whole or in part by a Ground Lease, either (1) the ground lessor's fee interest is subordinated to the lien of the Mortgage and the Mortgage will not be subject to any lien or encumbrances on the ground lessor's fee interest, other than Permitted Encumbrances, and the holder of the Mortgage is permitted to foreclose the ground lessor's fee interest within a commercially reasonable time period or (2) the following apply to such Ground Lease:

(a)     Such Ground Lease or a memorandum thereof has been or will be duly recorded; such Ground Lease (or the related estoppel letter or lender protection agreement between the Seller and related lessor) permits the interest of the lessee thereunder to be encumbered by the related Mortgage; does not restrict the use of the related Mortgaged Property by the lessee or its permitted successors and assigns in a manner that would materially and adversely affect the security provided by the related Mortgage; and there has been no material change in the payment terms of such Ground Lease since the origination of the related Mortgage Loan, with the exception of material changes reflected in written instruments that are a part of the related Mortgage File;

(b)     The lessee's interest in such Ground Lease is not subject to any liens or encumbrances superior to, or of equal priority with, the related Mortgage, other than the ground lessor's related fee interest and Permitted Encumbrances;

(c)     The Mortgagor's interest in such Ground Lease is assignable to the Purchaser and its successors and assigns upon notice to, but without the consent of, the lessor thereunder (or, if such consent is required, it has been obtained prior to the related Closing Date) and, in the event that it is so assigned, is further assignable by the Purchaser and its successors and assigns upon notice to, but without the need to obtain the consent of, such lessor;

(d)     Such Ground Lease is in full force and effect, and the Seller has received no notice that an event of default has occurred thereunder, and, to the best of Seller's knowledge, there exists no condition that, but for the passage of time or the giving of notice, or both, would result in an event of default under the terms of such Ground Lease;

(e)     Such Ground Lease, or an estoppel letter or other agreement, requires the lessor under such Ground Lease to give notice of any default by the lessee to the mortgagee (concurrent with notice given to the lessee), provided that the mortgagee has provided the lessor with notice of its lien in accordance with the provisions of such Ground Lease, and such Ground Lease, or an estoppel letter or other agreement, further provides that no notice of termination given under such Ground Lease is effective against the mortgagee unless a copy has been delivered to the mortgagee.  The Seller has provided the lessor under the Ground Lease with

7

notice of the Seller's lien on the Mortgaged Property in accordance with the provisions of such Ground Lease;

(f)     A mortgagee is permitted a reasonable opportunity (including, where necessary, sufficient time to gain possession of the interest of the lessee under such Ground Lease) to cure any default under such Ground Lease, which is curable after the receipt of notice of any such default, before the lessor thereunder may terminate such Ground Lease by reason of such default;

(g)     Such Ground Lease has an original term, along with any extensions set forth in such Ground Lease, not less than 10 years beyond the full amortization term of the Mortgage Loan (or if such Mortgage Loan does not fully amortize over its terms, 20 years beyond its maturity date);

(h)     Under the terms of such Ground Lease and the related Mortgage, taken together, any related insurance proceeds, other than for a total loss or taking, will be applied either to the repair or restoration of all or part of the related Mortgaged Property, with the mortgagee or a trustee appointed by the mortgagee having the right to hold and disburse such proceeds as the repair or restoration progresses (except in such cases where a provision entitling another party to hold and disburse such proceeds would not be viewed as commercially unreasonable by a prudent multi-family, commercial and mixed-use mortgage lender (as applicable)), or to the payment of the outstanding principal balance of the Mortgage Loan together with any accrued interest thereon, and any insurance proceeds in respect of a total or substantially total loss or taking may be applied either to payment of outstanding principal and interest on the Mortgage Loan (except as otherwise provided by law) or to rebuilding of the Mortgaged Property;

(i)     Such Ground Lease does not impose any restrictions on subletting which would be viewed, as commercially unreasonable by the Seller; and such Ground Lease contains a covenant that the lessor thereunder is not permitted, in the absence of an uncured default, to disturb the possession, interest or quiet enjoyment of any subtenant of the lessee, or in any manner, which would materially and adversely affect the security provided by the related Mortgage;

(j)     Such Ground Lease, or an estoppel or other agreement, requires the lessor to enter into a new lease with the Seller or its successors or assigns under terms which do not materially vary from the economic terms of the Ground Lease, in the event of a termination of the Ground Lease by reason of a default by the Mortgagor under the Ground Lease, including rejection of the Ground Lease in a bankruptcy proceeding; and

(k)     Such Ground Lease may not be materially amended, modified or, except in the case of a default, cancelled or terminated without the prior written consent of the holder of the Mortgage Loan, and any such action without such consent is not binding on such holder, including any increase in the amount of rent payable by the lessee thereunder during the term of the Mortgage Loan.

18.   <u>Escrow Deposits</u>.  Except with respect to Delinquent Mortgage Loans included in Schedule III, all escrow deposits and payments relating to each Mortgage Loan that are, as of the related Closing Date, required to be deposited or paid have been so deposited or paid, and those escrow deposits and payments are under control of the Seller or its agents.

19.   <u>No Fraud</u>.  In the origination and servicing of the Mortgage Loan, neither the Seller nor any Affiliate thereof participated in any fraud or intentional material misrepresentation with respect to the Mortgage Loan. To the best of Seller's knowledge, no Mortgagor is guilty of defrauding or making a material misrepresentation to the Seller with respect to the origination of the Mortgage Loan.

20.   <u>Advancement of Funds by the Seller</u>.  Except for escrow shortfalls incurred in normal business operations, the Seller has not advanced funds (nor, to Seller's knowledge, has any prior holder of such Mortgage Loan), or induced, solicited or knowingly received any advance of funds from a party other than the owner of the related Mortgaged Property (or any tenant required to make its lease payments directly to the holder of the related Mortgage Loan), directly or indirectly, for the payment of any amount required by such Mortgage Loan.

21.   <u>No Mechanics' Liens</u>.  As of the applicable Mortgage Loan origination date, and as of the related Closing Date, each Mortgaged Property is free and clear of any and all mechanics' and materialmen's liens that are prior or equal to the lien of the related Mortgage and no rights are outstanding that under law could give rise to any such lien that would be prior or equal to the lien of the related Mortgage except, in each case, for liens insured against by the Title Policy referred to herein, or, if any such liens existing as of the related Closing Date are not insured against by the Title Policy referred to herein, such liens will not have a material adverse effect on the value of the related Mortgaged Property.

22.   <u>Compliance With Laws</u>.  On the date of its origination, each Mortgage Loan complied in all material respects with, or was exempt from, all requirements of federal, state or local law relating to the origination, funding and servicing of such Mortgage Loan and assuming that the interest rate related to each such Mortgage Loan, effective on the date of origination, remains constant throughout the life of the Mortgage Loan, the Mortgage Loan complied with, or is exempt from, applicable state or federal laws, regulations or other requirements pertaining to usury.

23.   <u>Cross-Collateralization</u>.  No Mortgage Loan is cross-collateralized or cross-defaulted with any loan other than one or more other Mortgage Loans.

24.   <u>Releases of Mortgaged Property</u>.  No Mortgage Note or Mortgage requires the mortgagee to release all or any material portion of the related Mortgaged Property that was included in the valuation for such Mortgaged Property, and/or generates income, from the lien of the related Mortgage except upon payment in full of all amounts due under the related Mortgage Loan other than the Mortgage Loans that require the mortgagee to grant a release of a portion of the related Mortgaged Property upon (a) the satisfaction of certain legal and underwriting requirements where the portion of the related Mortgaged Property permitted to be released was not considered by the Seller to be material in underwriting the Mortgage Loan or, in the case of a substitution, where the Mortgagor is entitled to substitute a replacement parcel at its unilateral

option upon the satisfaction of specified conditions, and/or (b) the payment of a release price and prepayment consideration in connection therewith, consistent with the Seller's normal multi-family, commercial and mixed-use mortgage lending practices (as applicable) (and in both (a) and (b), any release of the Mortgaged Property has been reflected in the Mortgage Loan Schedule).  Except as described in the prior sentence (other than with respect to substitution), no Mortgage Loan permits the full or partial release or substitution of collateral unless (1) the mortgagor is entitled to substitute a replacement parcel at its unilateral option upon satisfaction of specified conditions, and (2) the mortgagee or servicer can require the Mortgagor to provide an opinion of tax counsel to the effect that such release or substitution of collateral (a) would not constitute a "significant modification" of such Mortgage Loan within the meaning of Treas. Reg. §1.1001-3 and (b) would not cause such Mortgage Loan to fail to be a "qualified mortgage" within the meaning of Section 860G(a)(3)(A) of the Code.  The loan documents with respect to each Mortgage Loan that permits the full or partial release or substitution of collateral requires the related Mortgagor to bear the cost of such opinion.

25.   <u>No Equity Participation or Contingent Interest</u>.  No Mortgage Loan is a negative amortization mortgage loan, contains any equity participation or provides for any contingent or additional interest in the form of participation in the cash flow of the related Mortgaged Property. Neither the Seller nor any Affiliate thereof has any obligation to make any capital contribution to the Mortgagor under the Mortgage Loan or otherwise.

26.   <u>No Material Default</u>.  Other than payments due but not yet 60 or more days delinquent, there exists no material default, breach, violation or event giving the lender the right to accelerate the Mortgage Loan (and, to the best of Seller's knowledge, no event has occurred which, with the passage of time or the giving of notice, or both, would constitute any of the foregoing) under the documents evidencing or securing the Mortgage Loan, in any such case to the extent the same materially and adversely affects the value of the Mortgage Loan and the related Mortgaged Property. The Seller has not waived any material default, breach, violation or event of acceleration under any of such documents and under the terms of each Mortgage Loan, each related Mortgage Note, each related Mortgage and the other Mortgage Loan Documents, no person or party other than the mortgagee may declare an event of default or accelerate the related indebtedness under such Mortgage Loan, Mortgage Note or Mortgage.

27.   <u>Local Law Compliance</u>.  Based on due diligence performed by the Seller at the time of the acquisition of the Mortgage Loan, the improvements located on or forming part of each Mortgaged Property comply with applicable zoning laws and ordinances, or constitute a legal non-conforming use or structure or, if any such improvement does not so comply, such non-compliance does not materially and adversely affect the value of the related Mortgaged Property, such value as determined by the appraisal or internal or external market study performed at origination.

28.   <u>Junior Liens</u>.  Except as set forth in Schedule III and as otherwise approved by the prior written consent of the Purchaser, none of the Mortgage Loans permits the related Mortgaged Property to be encumbered by any lien (other than a Permitted Encumbrance) junior to or of equal priority with the lien of the related Mortgage.  Except as set forth in Schedule III, Seller has no knowledge that any of the Mortgaged Properties is encumbered by any lien junior to the lien of the related Mortgage.

29.     <u>Actions Concerning Mortgage Loans</u>.  As of the origination date, to the best of Seller's knowledge as of the Cut-off Date, there are no threatened or pending actions, suits or proceedings before any court, administrative agency or arbitrator concerning any Mortgage Loan, Mortgagor or related Mortgaged Property that could reasonably be expected to adversely affect title to the Mortgaged Property or the validity or enforceability of the related Mortgage or that could reasonably be expected to materially and adversely affect the value of the Mortgaged Property as security for the Mortgage Loan or the use, value or operation for which the premises were intended.

30.     <u>Servicing</u>.  The servicing and collection practices used by the Seller or any prior holder or servicer of each Mortgage Loan have been in all material respects legal, proper and prudent and have met customary industry standards utilized by multi-family, commercial and mixed-use mortgage lending institutions (as applicable) in the area where the related Mortgaged Property is located.

31.     <u>Licenses and Permits</u>.  To the best of Seller's knowledge, based on due diligence that it customarily performs in the origination of comparable mortgage loans, as of the date of origination of each Mortgage Loan, and to the best of Seller's knowledge, as of the related Closing Date, the related Mortgagor was in possession of all material licenses, permits and franchises required by applicable law for the ownership and operation of the related Mortgaged Property as it was then operated.

32.     <u>Collateral in Trust</u>.  The Mortgage Note for each Mortgage Loan is not secured by a pledge of any collateral that has not been assigned to the Purchaser.

33.     <u>Due on Sale/Due on Encumbrance</u>.  Each Mortgage Loan contains a "due on sale" clause, which provides for the acceleration of the payment of the unpaid principal balance of the Mortgage Loan if, without prior written consent of the holder of the Mortgage, the property subject to the Mortgage or any material portion thereof, is transferred, sold or encumbered by a junior mortgage or deed of trust; provided, however, that certain Mortgage Loans provide a mechanism for the assumption of the loan by a third party upon the Mortgagor's satisfaction of certain conditions precedent, and upon payment of a transfer fee, if any, or transfer of interests in the Mortgagor or constituent entities of the Mortgagor to a third party or parties related to the Mortgagor upon the Mortgagor's satisfaction of certain conditions precedent.

34.     <u>Recourse</u>.  Subject to the requirements and restrictions of governing law and except as set forth in Schedule III, each Mortgage Loan with an original principal balance less than $1,000,000.00 provides for full recourse to the Mortgagor or the Person or Persons guaranteeing the obligations of a Mortgagor under a Mortgage Note (the "<u>Guarantor</u>"). Each Mortgage Loan with an original principal balance greater than $1,000,000.00 provides for recourse to the Mortgagor or the Guarantor of $1,000,000.00.   Either the Mortgagor or a Guarantor with respect to each Mortgage Loan is a natural person.

35.     <u>REMIC Eligibility</u>. Each Mortgage Loan is a "qualified mortgage" as such term is defined in Section 860G(a)(3) of the Code (without regard to Treasury Regulations Section 1.860G-2(f)(2), which treats certain defective mortgage loans as qualified mortgages).  Each Mortgaged Property will qualify as foreclosure property within the meaning of Section 856(e) of

the Code if obtained by foreclosure or deed in lieu of foreclosure.  No Mortgage Loan permits defeasance.

36.     Property Appraisal. Each Mortgage Loan will contain an appraisal, which appraisal is signed by an appraiser, who, to the best of the Seller's knowledge, had no interest, direct or indirect, in the Mortgaged Property or the Mortgagor or in any loan made on the security thereof, and whose compensation is not affected by the approval or disapproval of the Mortgage Loan. Such appraisal conforms to Uniform Standards of Professional Appraisal Practice guidelines. For each Mortgage Loan with an original principal balance greater than $1,000,000, the Seller has provided a full self-contained report written in summary format including three valuation approaches and for each Mortgage Loan with an original principal balance less than $1,000,000, the Seller has provided either a full self-contained report written in summary format including three valuation approaches or a report in summary form prepared in the standard Freddie Mac format (FHLMC Form 71(B)) or a form with content substantially similar thereto.

37.     Yield Maintenance Premiums and Prepayment Premiums. Subject to the requirements and restrictions of governing law, the Mortgage Loan Documents and the Loan Underwriting Guidelines, each yield maintenance premium and prepayment premium is consistent with that charged by the Seller in its customary lending practices with respect to mortgage loans of the size and character of the Mortgage Loans.  All prepayment premiums and yield maintenance premiums constitute "customary prepayment penalties" within the meaning of Treasury Regulations Section 1.860G-1(b)(2).

38.     Loan Provisions.  No Mortgage Loan contains a provision that by its terms would automatically or at the unilateral option of the Mortgagor cause such Mortgage Loan not be a "qualified mortgage" as such term is defined in Section 860G(a)(3) of the Code.

39.     Assumption Costs.  The related Mortgage Loan Documents require the related Mortgagor to pay all reasonable costs and expenses of lender associated with the approval of an assumption of such Mortgage Loan.

40.     Confidentiality.  There are no provisions in any Note, Mortgage or related loan documents with respect to any Mortgage Loan, nor any other agreements or enforceable understandings with any Mortgagor, Mortgagor principal or Guarantor, which restrict the dissemination of information regarding any Mortgagor, Mortgagor principal, Guarantor or Mortgaged Property by the owner or holder of the Mortgage Loan or requires such owner or holder to treat any information regarding any Mortgagor, Mortgagor principal, Guarantor or Mortgaged Property as confidential; provided, however that state and federal laws may specifically limit the use and/or dissemination of such information.

41.     Separate Tax Lots. Each Mortgaged Property contains one or more separate tax lots (or will constitute separate tax lots when the next tax maps are issued) or is subject to an endorsement under the related Title Policy.

42.     Approved Originator.  Each Mortgage Loan was originated by a savings and loan association, savings bank, commercial bank, credit union, insurance company, or similar

institution that is supervised and examined by a Federal or State authority, or by a mortgagee approved by the Secretary of Housing and Urban Development pursuant to sections 203 and 211 of the National Housing Act.

43.   <u>Access/Utilities</u>. To the best of Seller's knowledge, each Mortgaged Property has adequate access to public ways and is served by utilities, including, without limitation, adequate water, sewer, electricity, gas, telephone, sanitary sewer, and storm drain facilities.  To the best of Seller's knowledge all public utilities necessary to the continued use and enjoyment of each Mortgaged Property as presently used and enjoyed are located in the public right-of-way abutting such Mortgaged Property, and all such utilities are connected so as to serve such Mortgaged Property without passing over other property.  To the best of Seller's knowledge, all roads necessary for the full use of each Mortgaged Property for such Mortgaged Property's current purpose have been completed and dedicated to public use and accepted by all governmental authorities or are subject of access easements for the benefit of such Mortgage Property.

SCHEDULE III

EXCEPTIONS TO REPRESENTATIONS AND WARRANTIES

The following exceptions are applicable with respect to the representations and warranties in Schedule II of the Agreement made by the Seller with respect to the Mortgage Loans:

Exceptions to Representation Number 3:

| CBAC Loan ID | Next Payment Due Date |
|---|---|
| 2005101383 | 03/01/2006 |
| 2005100682 | 03/01/2006 |
| 2005100946 | 03/01/2006 |
| 2005101106 | 03/01/2006 |
| 2005101116 | 03/01/2006 |
| 2005101120 | 03/01/2006 |
| 2005101121 | 03/01/2006 |
| 2005101130 | 03/01/2006 |
| 2005101153 | 03/01/2006 |
| 2005101164 | 03/01/2006 |
| 2005101183 | 03/01/2006 |
| 2005101184 | 03/01/2006 |
| 2005101202 | 03/01/2006 |
| 2005101227 | 03/01/2006 |
| 2005101262 | 03/01/2006 |
| 2005101266 | 03/01/2006 |
| 2005101295 | 03/01/2006 |
| 2005100906 | 03/01/2006 |

Exceptions to Representation Number 28

Loans that permit second liens without Purchaser consent

| CBAC Loan ID | CBAC Loan ID | CBAC Loan ID |
|---|---|---|
| 2005100578 | 2005100799 | 2005101301 |
| 2005100580 | 2005100802 | 2005101302 |
| 2005100595 | 2005100843 | 2005101303 |
| 2005100602 | 2005100858 | 2005101305 |
| 2005100603 | 2005100862 | 2005101306 |
| 2005100611 | 2005100888 | 2005101307 |
| 2005100620 | 2005100891 | 2005101308 |
| 2005100623 | 2005100898 | 2005101309 |
| 2005100649 | 2005100901 | 2005101310 |
| 2005100651 | 2005100906 | 2005101311 |
| 2005100776 | 2005100914 | 2005101313 |
| 2005100798 | | |

SCHEDULE III

EXCEPTIONS TO REPRESENTATIONS AND WARRANTIES

(continued)

| CBAC Loan ID | CBAC Loan ID | CBAC Loan ID |
| --- | --- | --- |
| 2005101314 | 2005101353 | 2005101390 |
| 2005101315 | 2005101355 | 2005101391 |
| 2005101316 | 2005101357 | 2005101392 |
| 2005101317 | 2005101358 | 2005101393 |
| 2005101318 | 2005101359 | 2005101394 |
| 2005101319 | 2005101361 | 2005101395 |
| 2005101320 | 2005101362 | 2005101396 |
| 2005101321 | 2005101363 | 2005101397 |
| 2005101322 | 2005101364 | 2005101398 |
| 2005101324 | 2005101365 | 2005101399 |
| 2005101325 | 2005101366 | 2005101400 |
| 2005101326 | 2005101367 | 2005101401 |
| 2005101327 | 2005101368 | 2005101402 |
| 2005101328 | 2005101369 | 2005101403 |
| 2005101329 | 2005101370 | 2005101404 |
| 2005101330 | 2005101371 | 2005101405 |
| 2005101331 | 2005101372 | 2005101406 |
| 2005101332 | 2005101373 | 2005101407 |
| 2005101333 | 2005101374 | 2005101408 |
| 2005101334 | 2005101375 | 2006101952 |
| 2005101337 | 2005101376 | 2006101953 |
| 2005101338 | 2005101377 | 2006101954 |
| 2005101339 | 2005101378 | 2006101956 |
| 2005101340 | 2005101379 | 2006101957 |
| 2005101341 | 2005101380 | |
| 2005101342 | 2005101381 | |
| 2005101343 | 2005101382 | |
| 2005101344 | 2005101383 | |
| 2005101345 | 2005101384 | |
| 2005101348 | 2005101385 | |
| 2005101349 | 2005101386 | |
| 2005101350 | 2005101387 | |
| 2005101351 | 2005101388 | |
| 2005101352 | 2005101389 | |

SCHEDULE III

EXCEPTIONS TO REPRESENTATIONS AND WARRANTIES

(continued)

Loans with Second Liens

| CBAC Loan ID |
| --- |
| 2005101348 |
| 2005100799 |

Exceptions to Representation Number 34:

| CBAC Loan ID | Recourse % |
| --- | --- |
| 2005101796 | 0.00% |
| 2005101800 | 0.00% |
| 2005101802 | 0.00% |

3