UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

JUAN VALDERA
SOBIEDA VALDERA
BAHIJ BOUTROS

    Vs                    20-cv-470 JJM

PHH MORTGAGE CORPORATION
DEUTSCHE BANK NATIONAL TRUST
COMPANY AS TRUSTEE FOR THE REGISTERED HOLDERS OF
CBA COMMERCIAL ASSETS,
SMALL BALANCE COMMERCIAL MORTGAGE PASS-THROUGH
CERTIFICATES, SERIES 2006-1

### MEMORANDUM IN SUPPORT OF MOTION TO ALTER OR AMEND JUDGMENT PURSUANT TO FRCP 59 DUE TO A MANIFEST ERROR OF LAW

    This Motion has been filed because this Court made two manifest errors of law in granting Defendants' Motion for Summary Judgment. Plaintiffs' complaint consisted of two claims. The first was a Declaratory Judgment action which requested that the Court declare that the Promissory Note executed by the Plaintiffs is not a negotiable instrument and as a result cannot be transferred pursuant to Article 3 of the Rhode Island Uniform Commercial Code by and endorsement in blank. The second Count was a complaint under the Fair Debt Collection Practices Act, in which Juan Valdera, a resident of the property located at 243 Rand Street, Central Falls,

1

Rhode Island since he purchased it with the other Plaintiffs on August 1, 2005 sued PHH Mortgage Corporation, through its attorney, Korde & Associates, PC for violations of the FDCPA for threatening to exercise the statutory power of sale without the ability to do so due to the fact that Deutsche Bank as Trustee had not been transferred an interest in the promissory note and because forty five days prior to mailing this particular Notice of Sale the Plaintiffs were not provided a Notice of Foreclosure Counseling pursuant to R.I.G.L. 34-27-3.1.

d at 273-277 Rand Street, Central Falls, Rhode Island to live in the premises. Thus Summary Judgment should be denied on this count.

THE COURT COMMITTED MANIFEST ERROR BY STATING THAT THE PROMISSORY NOTE IS A NEGOTIABLE INSTRUMENT AND COULD BE TRANSFERRED BY AN ENDORSEMENT IN BLANK.

The Plaintiffs respectfully suggest that the Court ignored the provision of the Rhode Island Uniform Commercial Code.  The Court did not look at the complaint which alleged that the promissory note contained multiple undertakings which had nothing to do with money and required the signers of the promissory note to undertake multiple tasks.  This note does not meet the criteria for a negotiable instrument pursuant to R.I.G.L 6A-3-104. Specifically it made numerous undertakings other than the promise to

make payments of money or to provide for acceleration or to secure collateral and stated the following non-monetary undertakings which made a non-negotiable instrument, which does not comply with the provisions of the Uniform Commercial Code, R.I.G.L 6A03-104, which defines a promissory note as follows: § 6A-3-104. Negotiable instrument. (a) Except as provided in subsections (c) and (d), "negotiable instrument" means an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it: (1) Is payable to bearer or to order at the time it is issued or first comes into possession of a holder; (2) Is payable on demand or at a definite time; and (3) **Does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money, but the promise or order may contain** (i) an undertaking or power to give, maintain, or protect collateral to secure payment, (ii) an authorization or power to the holder to confess judgment or realize on or dispose of collateral, or (iii) a waiver of the benefit of any law intended for the advantage or protection of an obligor. (emphasis added)

When the UCC was adopted in Rhode Island, it contained Official Comments, which the Supreme Court has analyzed to determine the scope of the UCC. The relevant portions of official comment for 6A-3-104 discuss

3

the need for no other promises: 1. The definition of "negotiable instrument" defines the scope of Article 3 since Section 3-102 states: "This Article applies to negotiable instruments." The definition in Section 3-104(a) incorporates other definitions in Article 3. An instrument is either a "promise," defined in Section 3-103(a)(12), or "order," defined in Section 3-103(a)(8). A promise is a written undertaking to pay money signed by the person undertaking to pay. An order is a written instruction to pay money signed by the person giving the instruction. Thus, the term "negotiable instrument" is limited to a signed writing that orders or promises payment of money, , ,  Fifth, the promise or order may not state "any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money" with three exceptions. The quoted phrase is based on the first sentence of N.I.L. Section 5 which is the precursor of "no other promise, order, obligation or power given by the maker or drawer" appearing in former Section 3-104(1)(b). The words "instruction" and "undertaking" are used instead of "order" and "promise" that are used in the N.I.L. formulation because the latter words are defined terms that include only orders or promises to pay money. The three exceptions stated in Section 3-104(a)(3) are based on and are intended to have the same meaning as former Section 3-112(1)(b), (c), (d), and (e), as well as N.I.L. § 5(1), (2), and

This Court ignored the Supreme Court case of *Rotelli v. Catanzaro,* 686 AS. 2d 91, 94 (R.I., 1996), in which the Supreme Court discussed negotiable instruments and applied the official comment in a footnote: [2] The parties have assumed that the promissory note is a negotiable instrument subject to § 6A-3-119 and have offered differing interpretations of Comment 3 to that section. **We note, however, that the promissory note contains a condition that destroys its negotiability, namely, that the note was subject to plaintiff's materially performing his obligations under a Release and Indemnification Covenant, a separate agreement signed by plaintiff on January 17, 1985.** The promise to pay was thus conditional and could not form the basis of a negotiable instrument. See §§ 6A-3- 104(1)(b) and 6A-3-105(2)(a).(emphasis added) .

This Court also ignored the reference to 6A-3-104 by the Rhode Island Supreme Court *in Note Capital Group, Inc. v. Perretta, 207 A. 2d 998* (2019). In that case, the Court applied UCC 3-309 regarding lost notes which were lost by a prior owner. The Court initially defined allonges in footnote 4 as: "[a] slip of paper sometimes attached to a negotiable instrument for the purpose of receiving further indorsements when the original paper is filled with

indorsements." Black's Law Dictionary 92 (10th ed. 2014). The Court defined a negotiable instrument by citing UCC 3-104 in note 10: [10] General Laws 1956 § 6A-3-104 defines a "negotiable instrument," in pertinent part, as: "an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it: "(1) Is payable to bearer or to order at the time it is issued or first comes into possession of a holder; "(2) Is payable on demand or at a definite time; and "(3) **Does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money,** but the promise or order may contain (i) an undertaking or power to give, maintain, or protect collateral to secure payment, (ii) an authorization or power to the holder to confess judgment or realize on or dispose of collateral, or (iii) a waiver of the benefit of any law intended for the advantage or protection of an obligor."

This Court ignored the Supreme Court decision in Labor Ready *Northeast, Inc. v McConaghy*, 849 A. 2d 340 (2004), the Rhode Island Supreme Court cited UCC 3-104 for the basic definition of negotiable instruments in construing a case involving instruments which were not

6

negotiable, but nevertheless were instruments for other purposes. In *Onewest Bank v FMCDH Realty*, 165 A.D.3d 128, 133 (NY App, 2018) the Appellate Division of the New York Supreme Court held that a note was not negotiable, citing a seminal case: In 1846, a negotiable instrument was famously compared, by Justice Gibson of the Supreme Court of Pennsylvania, to a 133*133 "courier without   luggage" (*Overton v Tyler*, 3 Pa 346, 347 [1846]), in recognition of the fact that such instruments must be "framed in the fewest possible words, and those importing the most certain and precise contract" (id. at 347). Negotiable instruments have changed considerably in the intervening 172 years. While they are no longer spare as they once were (see Grant Gilmore, Formalism and the Law of Negotiable Instruments, 13 Creighton L Rev 441, 453 [1979]), Justice Gibson's description has proved to be remarkably resilient—though it may be more accurate to describe the modern negotiable instrument as a courier with a personal item and one carry-on bag.

The Rhode Island UCC provides some leeway for additional provisions in UCC 3-106, which allows additional promises but only for limited purposes: § 6A-3-106. Unconditional promise or order. (a) Except as provided in this section, for the purposes of § 6A-3-104(a), a promise or order is unconditional unless it states (i) an express condition to payment,

7

(ii) that the promise or order is subject to or governed by another writing, or (iii) that rights or obligations with respect to the promise or order are stated in another writing. A reference to another writing does not of itself make the promise or order conditional. (b) A promise or order is not made conditional (i) by a reference to another writing for a statement of rights with respect to collateral, prepayment, or acceleration, or (ii) because payment is limited to resort to a particular fund or source. (c) If a promise or order requires, as a condition to payment, a countersignature by a person whose specimen signature appears on the promise or order, the condition does not make the promise or order conditional for the purposes of § 6A-3-104(a).  As will be demonstrated in this memorandum, the Loan agreement contains numerous conditions and promises, which do not fit within UCC 3-104 or 3- 106 and thus is a non-negotiable instrument.

    The Court committed manifest error by suggesting that the Plaintiffs contended that the note was non-negotiable because it was a variable rate note. However the Plaintiffs did not make this contention. They alleged that the promissory note contained multiple undertakings which rendered the note more than just a promise to pay money and included multiple undertakings not permitted under Article 3 of the Uniform Commercial Code for a Negotiable Instrument. This note does not merely reference other

documents and obligations, but instead imposes those obligations as part of the obligations in the note. A review of this purported Promissory Note indicates multiple additional obligations which render it a non-negotiable instrument, not permitted by 6-104 or 6-106.

      The DEFAULT section on page one provides for default upon the list of conditions not related to the payment of the note. These include thee following undertakings:

      TOTHER DEFAULTS

Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower. However any reference to related documents or agreements renders the note conditional and requires reference to a document which is not the promissory note. This language makes the note conditional and requires reference to another documents in order to determine that there is a default since under 6-106 its negotiability is destroyed because  the promise  is subject to or governed by another writing,

9

ENVIRONMENTAL DEFAULT

Failure of any party to comply with or perform when due any term, obligation, covenant or condition contained in any environmental agreement executed in connection with any loan.

Once again this language makes the note conditional and requires reference to another documents in order to determine that there is a default since under 6-106 its negotiability is destroyed because the promise is subject to or governed by another writing,

FALSE STATEMENTS

 Any warranty, representation or statement made or furnished to lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, wither now or at the time made or furnished or becomes false or misleading at any time thereafter.

This provision renders a default based on another documents and this language makes the note conditional and requires reference to another documents in order to determine that there is a default since under 6-106 its negotiability is destroyed because the promise is subject to or governed by another writing,

DEATH OR INSOLVENCY The death of Borrower or the dissolution of termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any party of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of proceeding under any bankruptcy or insolvency laws by or against Borrower.

This provision provides for an additional undertaking, namely that the Borrower not die, terminate its business, which requires reference to other documents, not to assign for the benefit of creditors or have a receiver on other property.  These render the note conditional on other matters not related to prepayment, acceleration or collateral.

 CREDITOR OR FOREITURE PROCEEDINGS.

 Commencement of foreclosure or forfeiture proceeding, whether by judicial proceeding, self help repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or

11

forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute. . This language relates to matters outside the note and mortgage and this transaction.

Court committed manifest error by ignoring this provision of 6A-3-104 which states:

Does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money. This note clearly stated many acts not permitted by this section. This Court committed manifest error by suggesting that other undertakings cannot destroy negotiability if they do not affect the amount payable under the promissory note. These undertakings once placed in the note do not have to affect the amount of money payable to render the note non-negotiable.

Article 9 of the Uniform Commercial Code applies to transfers of this note and requires proof of each sale of the note from New Century. The first sale of notes in this Trust were by New Century to CBA Commercial, LLC. The second sale of the notes in this Trust were by CBA Commercial, LLC to CBA Commercial Assets, LLC. Deutsche Bank purchased all the notes in the trust from CBA Commercial Assets, LLC. There is no documentation

12

which verifies and confirms any transactions from the originator to Deutsche Bank. The Note thus was not a negotiable instrument and could not be transferred to Deutsche Bank by a blank endorsement. R.I.G.L 6A-9-109(a)(3) which provides:

6A-9-109. Scope. (a) General scope of chapter. Except as otherwise provided in subsections (c) and (d), this chapter applies to:

(1) A transaction, regardless of its form, that creates a security interest in personal property or fixtures by contract;

(2) An agricultural lien;

(3) A sale of accounts, chattel paper, payment intangibles, or promissory notes; Due to the non-negotiable nature of the Note, Deutsche Bank can not enforce any obligations under the note and exercise the statutory power of sale. As a result Deutsche Bank has no ownership interest in the Note.

The Rhode Island Supreme Court in *Bucci v. Lehman*, 68 A.3d 1069 (2013) held that the power of the statutory power of sale could be exercised by a mortgagee provided that it was the holder of the note or an agent for the owner of the note:

1087*1087 Similarly, we do not believe that our General Assembly "intended to proscribe [the] application of general agency principles in the context of mortgage foreclosure sales." *Eaton,* 969 N.E.2d at 1131. Therefore, we interpret the term "mortgagee" in our statutes in a similar

13

fashion as did the Supreme Judicial Court of Massachusetts. Thus, it is our opinion that none of the statutes that plaintiffs rely upon prohibit MERS from foreclosing on the Bucci mortgage, because in so doing, MERS would be acting as an agent on behalf of the note owner. Furthermore, under our reading of these statutes, any of the obligations placed upon a "mortgagee" may be fulfilled by either the mortgage holder or the owner of the note, provided that an agency relationship exists between the two.

The Plaintiff's complaint sought to preclude Deutsche Bank from exercising the statutory power of sale until it is able to demonstrate that it is the owner of the New Century Note or is the agent for the owner of the note. It did neither and as a result the Court committed manifest error by granting summary judgment.

## THE COURT COMMITTED MANIFEST ERROR BY GRANTING SUMMARY JUDGEMENT TO PHH

The Court committed manifest error that the Plaintiffs did present any evidence as to any acts of PHH which violated the FDCPA. However in their complaint and their statement of undisputed facts they did. The alleged the following:

69. PHH, through its attorney, has threatened to commence and has claimed to have commenced a non-judicial foreclosure to effect dispossession of the Plaintiffs of their property even though PHH and Deutsche Bank had no present right to possession of the property claimed as collateral through an enforceable security interest.

14

70. It also made a threat to take legal action which could not legally be taken, namely exercise the statutory power of sale and seek a deficiency judgment against the Plaintiffs in the event that the foreclosure sale will be insufficient to cover the amount due on the loan.

71. Specifically it stated, through its attorney, by the letter dated September 11, 2020 that a Mortgage Foreclosure sale of the Plaintiff's property would occur on November 3, 2020.

72. The threat to conduct a Mortgage Foreclosure Sale on September 11, 2020 was a deceptive action on the part of PHH due to the failure to provide a Notice of Foreclosure counseling and Deutsche Bank not being the owner of the note.

73. Each of these actions of PHH was a violation of 15 U.S.C. 1692e(5).

74. The facts alleged in this complaint establish that Deutsche Bank did not have the present right to possession of the property claimed as collateral through an enforceable security interest due to the fact that the obligation referenced in the note was not transferred to Deutsche Bank because the note was not a negotiable instrument.

75. As alleged above, PHH violated 15 U.S.C 1692e(5) by threatening to take legal action which it could not take on behalf of Deutsche Bank.

76. PHH also violated section 1692e of the FDCPA by using false deceptive and misleading representations or means in connection with the collection of this alleged debt.

77. PHH made false representations regarding the character and legal status of the debt, namely that Deutsche Bank was holder of the note and that Deutsche Bank could exercise the statutory power of sale.

78. All the actions of PHH, alleged in this complaint, were designed to compel the Plaintiffs to pay monies to PHH on behalf of Deutsche Bank, individually and through its attorney, on behalf of the alleged owner of the note under the false threat of foreclosure of their property unless they made such a payment to PHH, through its attorney on behalf of the entity, which claimed to own the note.

79. 15 U.S.C. § 1692(f) provides that a debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt.

80. 15 U.S.C. § 1692(d) provides that a debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.

81. PHH violated 15 U.S.C. § 1692(f) because its conduct as outlined herein constitutes an unconscionable means to collect or to attempt to collect a debt.

82. PHH violated 15 U.S.C. § 1692(d) by employing an unfair and unconscionable means to collect a debt

The Court committed manifest error by not considering the conduct of the Defendant, which violated 15 USC 1692f(6) which prohibits the following acts and makes a default servicer liable:

**(6)**Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if—
**(A)**
there is no present right to possession of the property claimed as collateral through an enforceable security interest;
**(B)**
there is no present intention to take possession of the property; or
**(C)**
the property is exempt by law from such dispossession or disablement.

Deutsche Bank lacked the right to foreclose since the property was exempt because 34-27-3.1 was not complied with before the second notice of sale.

Thus this Court committedemanifest error